# 14-3845-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

DAVID LOLA, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

*and*

GERALD RUSH,

*Plaintiff,*

*v.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP,
TOWER LEGAL STAFFING, INC.,

*Defendants-Appellees.*

————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANTS-APPELLEES

Stephanie L. Aranyos
Brian J. Gershengorn
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
*Attorneys for Defendants-Appellees*
1745 Broadway, 22nd Floor
New York, New York 10019
212-492-2500

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Skadden, Arps, Slate, Meagher & Flom LLP certifies that it has no parent company and there are no publicly held corporations that own 10% or more of its stock.  Further, Defendant-Appellee Tower Legal Solutions d/b/a Tower Legal Staffing, Inc. certifies that it has no parent company and there are no publicly held corporations that own 10% or more of its stock.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................1

COUNTER-STATEMENT OF ISSUES PRESENTED ......................................1

COUNTERSTATEMENT OF THE CASE ........................................................2

    A. Factual Background ........................................................2

    B. Procedural History ........................................................3

SUMMARY OF ARGUMENT ........................................................4

ARGUMENT ........................................................7

I. APPLICABLE STANDARD OF REVIEW ........................................................7

II. THE FLSA'S PROFESSIONAL EXEMPTION IS CLEAR ON
THE FACE OF LOLA'S AMENDED COMPLAINT ........................................................9

III. THE DISTRICT COURT'S FINDING THAT STATE LAW
GOVERNS THE "PRACTICE OF LAW" ANALYSIS OF THE
PROFESSIONAL EXEMPTION SHOULD BE AFFIRMED ........................................................11

IV. DISCOVERY IS NOT NEEDED TO DETERMINE THE
STATE WITH THE GREATEST INTEREST IN APPLYING ITS
DEFINITION OF THE "PRACTICE OF LAW" ........................................................15

V. THE DISTRICT COURT CORRECTLY CONCLUDED THAT
NORTH CAROLINA'S DEFINITION OF THE "PRACTICE OF
LAW" APPLIES ........................................................19

    A. North Carolina's Paramount Interest In Regulating Employees
In The State Is Clear ........................................................20

    B. North Carolina's Interest Outweighs The Interests Of Any Other State ........24

        1. Applying The Law Of An Attorney's License Creates An
Unworkable Standard When Attorneys Are Licensed In Multiple
Jurisdictions ........................................................25

i

2. Applying The "Jurisdiction At Which A Lawyer's Work Is Directed" Has No Bearing On Lola's FLSA Action And Creates An Unworkable Standard When Attorneys Provide Advice In Multiple States ................................................................................26

3. A Client's Location Has No Bearing On This Analysis ..............................28

VI. THE DISTRICT COURT CORRECTLY CONCLUDED THAT LOLA WAS ENGAGED IN THE PRACTICE OF LAW UNDER NORTH CAROLINA'S DEFINITION ................................................30

VII. EVEN IF A FEDERAL STANDARD IS APPLICABLE TO THE FLSA DEFINITION OF "PRACTICE OF LAW," LOLA WAS STILL ENGAGED IN THE PRACTICE THEREOF AND AN EXEMPT PROFESSIONAL UNDER THE LAW ......................................34

A. *Oberc* Relied On Federal Principles To Conclude That Lola Was Engaged In The Practice Of Law ................................35

B. Federal Courts Have Consistently Held That Document Review, Conducted By Contract Attorneys, Is The Practice Of Law ............................36

1. Court's Acknowledge That Document Review Is Of Critical Importance In Litigations ................................................39

a. Document Review Is Protected By Privilege ..................39

b. Attorneys' Fees Are Appropriate For Contract Attorneys Performing Document Review ........................41

C. Lola's Reliance On The ABA Task Force On Model Definition Of Practice Of Law Is Misplaced ................................41

1. Even Under Lola's Baseless Federal Definition, Lola Was Engaged In The Practice Of Law ................................44

D. The *Henig* Practice Of Law Test Is Mistaken And Not Binding On This Court ................................................46

CONCLUSION ................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
690 F.3d 98 (2d Cir. 2012) ...........................................................................16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................8

*Auer v. Robbins*,
519 U.S. 452 (1997)..........................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................7, 8

*Belt v. EmCare, Inc.*,
351 F. Supp. 2d 625 (E.D. Tex. 2005).........................................................13, 14

*Birbrower v. Super. Ct. of Santa Clara County*,
949 P.2d 1 (Cal. 1998) ...................................................................................27

*Bissessur v. Indiana Univ. Bd. Of Trustees*,
581 F.3d 599 (7th Cir. 2009) .........................................................................19

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
2013 WL 2322678 (S.D.N.Y. May 21, 2013) ..................................................40

*Bobbitt v. Milberg, LLP*,
285 F.R.D. 424 (D. Ariz. 2012)......................................................................27

*Chandris, S.A. v. Yanakakis*,
668 So.2d 180 (Fla. 1996) ..............................................................................27

*Clarendon America Insurance Co. v. Hickok*,
370 Ark 41 (Ark. 2007) ...................................................................................27

*Colmar, Ltd. v. Fremantlemedia North America, Inc.*,
801 N.E.2d 1017 (App. Ct. Ill. 2003) .............................................................28

*Columbus Bar Assn. v. Thomas*,
109 Ohio St.3d 89 (Ohio 2006) .......................................................................27

*Conopco, Inc. v. Roll Intern.*,
  231 F.3d 82 (2d Cir. 2000) ...................................................8

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 Fed. Appx. 250 (3d Cir. 2010) ...................................17

*De Sylva v. Ballentine*,
  351 U.S. 570 (1956) .................................................12, 13

*Eli Lilly Do Brasil, Ltda v. Fed. Express Corp.*,
  502 F.3d 78 (2d Cir. 2007) ..............................................20

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
  2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ........................41

*Guinup v. Petr-All Petroleum Corp.*,
  2010 WL 3338800 (N.D.N.Y. Aug. 23, 2010) ...................47

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
  213 F.3d 48 (2d Cir. 2000) ..............................................29

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ................................................8

*Horack v. Southern Real Estate Co. of Charlotte, Inc.*,
  563 S.E.2d 47 (N.C. Ct. App. 2002) ................................24

*Henig v. Quinn Emanuel Urquhart & Sullivan*,
  No. 13 CV 1432 (S.D.N.Y. Dec. 11, 2013) ..................46, 47

*In re Adderall XR Antitrust Litigation*,
  754 F.3d 128 (2d Cir. 2014) ..............................................7

*In re AOL Time Warner Shareholder Derivative Litigation*,
  2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ........................41

*In re Enron Securities, Derivative & ERISA Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ..............................41

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ................................41

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)...............................................................................15, 16

*Jacob v. Duane Reade, Inc.*,
  2012 WL 651536 (S.D.N.Y. Feb. 28, 2012) ......................................40

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)..................................................................11, 12, 14, 46

*LegalZoom.com, Inc. v. N. Carolina State Bar*,
  2014 WL 1213242 (N.C. Super. Mar. 24, 2014)..............................33

*Mastafa v. Chevron Corp.*,
  770 F.3d 170 (2d. Cir. 2014) ..............................................................8

*Mellon Bank, N.A. v. United Bank Corp. of New York*,
  31 F.3d 113 (2d Cir. 1994) .................................................................15

*Metropolitan Life Ins. Co. v. Mass.*,
  471 U.S. 724 (1985)..............................................................................21

*N. Amer. Tech Servs. v. V.J. Technologies, Inc.*,
  2011 U.S. Dist. LEXIS 111816 (D.Conn. Sept. 29, 2011)...........17, 18

*N. Carolina State Bar v. Lienguard, Inc.*,
  2014 WL 1365418 (N.C. Super. Apr. 4, 2014) ................................33

*Nakahata v. New York-Presbyterian Healthcare Syst., Inc.*,
  2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012) ...................................8, 9

*Neely v. Club Med Mgmt. Servs., Inc.*,
  63 F.3d 166 (3d Cir. 1995) .................................................................16

*Neitzke v. Williams*,
  490 U.S. 319 (1989)..............................................................................19

*O'Neill v. Mermaid Touring Inc.*,
  968 F. Supp. 2d 572 (S.D.N.Y. 2013)...........................................22, 23

*Oberc v. BP PLC*,
  2013 WL 6007211 (S.D. Tex. Nov. 13, 2013) ..........................*passim*

*Pacific Merchant Shipping Ass'n v. Aubry*,
918 F.2d 1409 (9th Cir. 1990) ...........................................................22

*Parrish v. Manatt, Phelps & Phillips, LLP*,
2011 WL 1362112 (N.D. Cal. Apr. 11, 2011)....................................39

*Pescatore v. Pan Am. World Airways, Inc.*,
97 F.3d 1 (2nd Cir. 1996) ............................................................20, 21

*Pippins v. KMPG*,
759 F.3d 235 (2d Cir. 2014) ...............................................................47

*Prudential Equity Group, LLC v. Ajamie*,
538 F. Supp.2d 605 (S.D.N.Y. 2008) ............................................27, 28

*Puckett v. United States*,
556 U.S. 129 (2009)..............................................................................15

*Pulse v. North Am. Land Title Co. of Montana*,
218 Mont. 275 (Mont. 1985) ...............................................................38

*Reconstruction Fin. Corp. v. Beaver Cnty., Pa*,
328 U.S. 204 (1946)........................................................................12, 13

*Ranta v. McCarney*,
391 N.W.2d 161 (N. Dak. 1986) .........................................................27

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ....................................................................7

*Sage Prods., Inc. v. Devon Indus. Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ...........................................................15

*Sawyer v. Market America, Inc.*,
661 S.E.2d 750 (N.C. Ct. App. 2008)..............................................23, 24

*Scariano v. Justices of the Sup. Ct. of the State of Ind.*,
852 F. Supp. 708 (S.D. Ind. 1994)......................................................29

*Schomer v. Bd. of Bar Examiners*,
987 N.E. 2d 588 (Mass. 2013)........................................................35, 38

*Scott v. SSP Amer., Inc.*,
   2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) ....................................47

*Shelton v. Am. Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986) .....................................................39, 40

*Simons v. Steverson*,
   88 Cal. App. 4th 693 (Ct. App. 2001) .............................................29

*Singh v. City of New York*,
   524 F.3d 361 (2d Cir. 2008) ..........................................................22

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ......................................................................15

*Somasekharan v. Lawrence & Associates, Inc.*,
   2007 WL 2680954 (C.D. Ill. July 13, 2007) ...................................23

*Speedmark Transp., Inc. v. Mui*,
   778 F. Supp. 2d 439 (S.D.N.Y. 2011) ...........................................18

*Spivak v. Sachs*,
   16 N.Y.2d 163 (N.Y. 1965) ..........................................................27

*Sporck v. Peil*,
   759 F.2d 312 (3d Cir. 1985) .........................................................39

*St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*,
   233 F. Supp. 2d 171 (D. Mass. 2002) ...........................................27

*United States v. Hardy*,
   681 F. Supp. 1326 (N.D. Ill. 1988) ...............................................38

*United States v. Kimbell Foods, Inc.*,
   440 U.S. 715 (1979) ......................................................................12

*United States v. Slade*,
   980 F.2d 27 (1st Cir. 1992) ...........................................................15

*Washburn v. Soper*,
   319 F.3d 338 (8th Cir. 2003) .........................................................27

*Wilcox v. Kirby*,
2009 WL 78436 (E.D. Tenn. Jan. 9, 2009)..........................................9

*Wooley v. Bridgeview Bank Mortgage Co.*,
2015 WL 327357 (N.D. Ill. Jan. 23, 2015).......................................23

*Zubair v. EnTech Engineering P.C.*,
808 F. Supp. 2d 592 (S.D.N.Y. 2011) ...........................................10

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA") ...................................*passim*

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1332(c)(1) .................................................................28

29 U.S.C. § 213(a)(1)....................................................................9

29 U.S.C. § 218(a) .....................................................................22

Cal. Civ. Proc. Code § 1282.4 .........................................................27

N.C. Gen. Stat. § 84-2.1 ...........................................................30, 33

N.C. Gen. Stat. § 84-4 .............................................................30, 33

N.C. Gen. Stat. § 95.25.1(b) ...........................................................23

N.C. Gen. Stat. § 95-25.14(b)(4) .......................................................23

**RULES**

29 C.F.R. § 541.300 ................................................................*passim*

29 C.F.R. § 541.301 ...................................................................44

29 C.F.R. § 541.304 ................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...........................................................*passim*

# OTHER AUTHORITIES

ABA Formal Opinion 00-420 (Nov. 29, 2000) ......................................................43

ABA Task Force on Model Defintion of Practice of Law Report and
Recommendation (Aug. 11, 2003)........................................................41, 42, 43

North Carolina State Bar Ethics Comm., 2007 Formal Ethics Op. 12
(Apr. 25, 2008) .................................................................................31, 32, 33, 34

New York State Department of Labor Opinion Letter RO-08-076
(Feb. 3, 2009)................................................................................................10

Pamela A. McManus, *Have Law License; Will Travel*, 15 GEO. J. LEGAL
ETHICS 527 (2002) ............................................................................................46

Restatement (Second) Conflicts of Law § 1 .............................................................35

Restatement (Second) Conflicts of Law § 197 ................................................20, 21

Defendants-Appellees Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") and Tower Legal Staffing, Inc. ("Tower") respectfully submit this brief in opposition to Plaintiff-Appellant David Lola's ("Lola's") appeal from the September 16, 2014 Opinion and Order of the United States District Court for the Southern District of New York (Richard Sullivan, U.S. District Judge) granting the Defendants-Appellees' Fed. R. Civ. P. 12(b)(6) motion to dismiss the First Amended Complaint (the "Amended Complaint") for failure to state a claim.

## JURISDICTIONAL STATEMENT

The district court's subject matter jurisdiction over Lola's claims under the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA") was conferred by 28 U.S.C. § 1331. The Court's appellate jurisdiction is conferred by 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.    Whether dismissal pursuant to Fed. R. Civ. P 12(b)(6) is proper where Lola fails to state a cause of action for overtime under the FLSA.

2.    Whether the district court correctly concluded that state law, as opposed to federal law, defines the "practice of law" as that term is used in the FLSA's regulation 29 C.F.R. § 541.304(a)(1).

3.    Whether the district court correctly concluded that, under federal choice-of-law principles, North Carolina's definition of the "practice of law" is the

applicable definition to determine whether Lola engaged in the "practice of law" under the FLSA.

4.    Whether the district court correctly concluded that Lola engaged in the "practice of law" under the North Carolina definition.

5.    Whether the district court correctly held that Lola was exempt from overtime under the FLSA professional exemption.

## COUNTERSTATEMENT OF THE CASE

### A.    Factual Background

Tower is a staffing company that provides attorneys on a contract and direct-hire basis to law firms and corporate law departments.  (A-17, ¶6.)[1]  Skadden is a law firm headquartered in New York City.  (A-17, ¶3.)  David Lola, Esq. is a licensed attorney hired by Tower on a temporary basis to review documents in connection with pending litigations in Ohio.  (A-17, ¶9.)  Lola, a North Carolina resident, performed this work in North Carolina. (A-17, ¶9; A-21, ¶30.)  Lola was an employee of Tower and was paid by Tower directly.  (A-17, ¶10.)

As a contract attorney hired to perform document review, Lola analyzed "hundreds of documents each day for the purpose of sorting the documents into certain categories."  (A-19, ¶21; A-20, ¶24.)  Lola was allegedly "required to review documents under very specific guidelines set forth by Defendants and to

---

[1] Citations to "A- __" are to the Joint Appendix.

sort the documents based on those guidelines." (A-20, ¶24.) Lola further claims that his "entire responsibility while working for Defendants consisted of (a) looking at documents to see what search terms, if any, appeared in the documents, (b) marking those documents into the categories predetermined by Defendants, and (c) at times drawing black boxes to redact portions of certain documents based on specific protocols that Defendants provided." (A-20, ¶28.) Based upon these alleged facts, Lola contends that he was not engaged in the practice of law. (A-21, ¶31.)

### B.    Procedural History

On July 18, 2013, Lola filed a putative FLSA collective action against Skadden and Tower in the Southern District of New York, alleging that Defendants-Appellees violated the FLSA by not paying him and other similarly situated individuals one and half times their regular rate of pay for overtime hours worked. (A-3, Dkt. No. 1; A-8 – A-15.) Lola filed an Amended Complaint on October 3, 2013. (A-4, Dkt. No. 17; A-16 – A-23.) Defendants-Appellees moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on December 6, 2013. (A-5, Dkt. No. 22.) In an Opinion and Order dated September 16, 2014, the Honorable Richard J. Sullivan granted Defendants-Appellees' motion to dismiss in its entirety, holding that as a licensed attorney engaged in the practice of law, Lola was exempt from the FLSA's overtime requirements pursuant to 29

C.F.R. § 541.304(a)(1).  (A-6, Dkt. No. 35; A-47 – A-61.)  Judgment was entered on September 18, 2014.  (A-7, Dkt. No. 38; A-62.)  Lola timely filed a notice of appeal on October 13, 2014.  (A-7, Dkt. No. 39; A-63.).

## SUMMARY OF ARGUMENT

A licensed attorney engaged in the practice of law is exempt from the FLSA. 29 C.F.R. § 541.304(a)(1).  Lola's overtime lawsuit is based entirely on the flawed theory that document review work is not the practice of law.  This legal theory runs contrary to the FLSA, overwhelming legal authority and common sense. The district court's Opinion and Order granting Defendants-Appellees' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) was correct as a matter of law and should be affirmed.

Because neither the Department of Labor, nor any United States Courts of Appeal, has addressed what it means for an employee to be engaged in the practice of law, the district court concluded that, under Supreme Court precedent, state standards concerning the "practice of law" need to animate the federal common law.  (A-51.) Applying federal choice-of-law principles, the district court correctly concluded that "for purposes of the FLSA's professional exemption, as implemented by 29 C.F.R. § 541.304(a)(1), federal courts should look to the definition of the 'practice of law' that is prevailing in the jurisdiction where the work is performed." (A-57.)  Reasoning that states have the greatest interest in

4

regulating employment within their own borders, the district court here applied North Carolina law.

Since Lola resides in North Carolina (A-17, ¶9; A-48) and performed document review in North Carolina (A-21, ¶30; A-48), North Carolina's interest in regulating employment within its own borders outweighs any other state's potential interest in applying their definition of the practice of law. (A-55.) By not briefing the choice-of-law issue below, Lola waived this argument in its entirety. Moreover, Lola's argument that discovery is required here simply makes no sense and, if accepted, would gut Fed. R. Civ. P. 12(b)(6) because plaintiffs like Lola would simply be able to plead around gating issues such as which law applies to their claims.

In any event, Lola cannot ignore the fact that he brought an FLSA claim for overtime. Thus, determining which state has the greatest interest in applying its definition of the practice of law must be viewed in this context and, after careful analysis the district court correctly concluded that Lola's own allegations point to North Carolina as the controlling law. As the district court noted, "it is always possible for creative lawyers and litigants to conjure elaborate and vexing hypotheticals" as to states that may have an interest in applying their state law. However, this does not change the fact that North Carolina's interest in regulating

employment and the practice of law within its borders is paramount to any other state's potential interest. No discovery is needed to reach this conclusion.

Analyzing North Carolina's definition of the "practice of law," the district court correctly concluded that Lola was engaged in the practice thereof. Lola's attempts to argue to the contrary are simply unavailing. Indeed, the North Carolina State Bar has issued a formal ethics opinion that recognizes document review as legal work.

Finally, Lola also calls for the creation of a federal definition of the "practice of law" that is contrary to the DOL's regulatory framework concerning the professional exemption and attempts to create a duties analysis. "The upshot of 29 C.F.R. § 541.304(d) is that licensed attorneys and doctors fall in a special class of workers that may be deemed to be professionals even without a fact-intensive inquiry into the nature of their job duties." (A-61.) Thus, there is no need for the fact-intensive federal test Lola seeks to impose. However, should it be found that a federal test applies, document review is a core attorney function and constitutes the practice of law. Courts recognize the legal significance of document review by bestowing attorney-work product protection on an attorney's selection and categorization of documents because it reflects the attorney's judgment. Moreover, when an attorney fails to properly perform document review, both the attorney and client face severe consequences, including waiver of privilege,

sanctions, preclusion of certain claims or defenses, and even dismissal of the case. Courts also routinely grant attorneys' fees incurred for document review performed by contract attorneys. Document review has such powerful legal repercussions because it is legal work. Thus, in conducting document review for a complex litigation, Lola was engaged in the practice of law as he applied legal principles and legal judgment in determining whether the documents reviewed were relevant, responsive, or privileged.

Accordingly, the district court's decision holding that Lola was exempt from the FLSA's overtime requirements as an attorney engaged in the practice of law, and thus dismissing his claim, should be affirmed.

## ARGUMENT

## I.     APPLICABLE STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal of the Amended Complaint for failure to state a claim on a motion to dismiss under Fed. R. Civ. P. 12 (b)(6). *Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013). Dismissal is proper for pleadings that fail to state a claim upon which relief can be granted. *In re Adderall XR Antitrust Litigation*, 754 F.3d 128, 135 (2d Cir. 2014). To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007), and "allow[] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (alterations omitted).

*Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d. Cir. 2014). To be plausible, the

complaint must evidence more than a mere possibility of a right to relief. *Iqbal*,

556 U.S. at 678; *Twombly*, 550 U.S. at 556.

Contrary to Lola's assertion, "[d]ismissal under Fed. R. Civ. P. 12(b)(6) is

appropriate when a defendant raises . . . an affirmative defense, and it is clear from

the face of the complaint . . . that the plaintiff's claims are barred as a matter of

law." *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000). Courts

routinely dismiss FLSA claims on a motion to dismiss where an affirmative

defense is apparent on the face of the complaint. *See, e.g.*, *Oberc v. BP PLC*, No.

4:13-CV-01382, 2013 WL 6007211, at *6-7 (S.D. Tex. Nov. 13, 2013) (dismissing

FLSA overtime claim because plaintiff, a contract attorney performing document

review, was engaged in the practice of law); *Nakahata v. New York-Presbyterian*

*Healthcare Syst., Inc.*, No. 11 Civ. 6658, 2012 WL 3886555, at *6 (S.D.N.Y. Sept. 6, 2012) (dismissing case where named plaintiffs were exempt professional employees); *Wilcox v. Kirby*, No. 3:07-cv-359, 2009 WL 78436, at *4 (E.D. Tenn. Jan. 9, 2009) (dismissing FLSA claim because plaintiff, an attorney, was a professional exempt from the FLSA).

## II.    THE FLSA'S PROFESSIONAL EXEMPTION IS CLEAR ON THE FACE OF LOLA'S AMENDED COMPLAINT

The FLSA provides exemptions from overtime requirements for employees employed in "a bona fide . . . professional capacity . . . ." 29 U.S.C. § 213(a)(1). Under rules promulgated by the Secretary of Labor pursuant to the FLSA, attorneys engaged in the practice of law are exempt "professional" employees:

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also shall mean: (1) Any employee who is the <u>holder of a valid license</u> or certificate permitting the practice of law or medicine or any of their branches and is <u>actually engaged in the practice</u> thereof[.]

29 C.F.R. § 541.304(a)(1) (emphasis added).  The Secretary has promulgated other rules that describe "professional employees" as follows:

> (a)    The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; and
>
> (2) Whose primary duty is the performance of work:

9

> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
>
> (i) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300. However, § 541.304 makes clear that these requirements (the salary basis and primary duty tests) do not apply to attorneys engaged in the practice of law. 29 C.F.R. § 541.304(d) ("[t]he requirements of § 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section"). Therefore, to satisfy the professional exemption, an employee need only be (1) an attorney; and (2) engaged in the practice of law. Lola concedes he is an attorney. The only question is whether he was engaged in the practice of law. On this point, he simply seeks to parse the issue too narrowly. By way of example, a licensed attorney is not "engaged in the practice of law," and is not an exempt professional, when he/she is a cook.[2] Clearly, for the reasons set

---

2 *See, e.g.*, New York State Department of Labor, Opinion Letter, RO-08-076, February 3, 2009 (opining that a "licensed attorney who chooses to work as a cook in a restaurant" is someone who would not be covered by the professional exemption). It should be noted that New York Labor Law follows the FLSA analysis for exempt professionals. *See Zubair v. EnTech Engineering P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (analysis of the FLSA professional exemption is "equally applicable" to New York Labor Law claim), *aff'd* 550 Fed. Appx. 59 (2d Cir. 2014) . *Cf. Oberc,* 2013 WL 6007211, at *6-7 (dismissing FLSA overtime claim because plaintiff, a contract attorney performing document review, was engaged in the practice of law).

forth below, the district court correctly concluded that Lola's document review work was in the ambit of legal work – not an unrelated field like cooking – and therefore dismissed Lola's Amended Complaint.

## III.  THE DISTRICT COURT'S FINDING THAT STATE LAW GOVERNS THE "PRACTICE OF LAW" ANALYSIS OF THE PROFESSIONAL EXEMPTION SHOULD BE AFFIRMED

The district court correctly observed that "[i]n applying a federal regulation like 29 C.F.R. § 541.304, the Court would normally defer to an interpretation given by the promulgating agency, unless that interpretation was 'plainly erroneous or inconsistent with the regulation.' *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citations and internal quotation marks omitted)."  (A-50.)  Because neither the Department of Labor, nor any United States Courts of Appeal, has addressed what it means for an employee to be engaged in the practice of law, the district court relied on Supreme Court precedent to conclude that state standards concerning the "practice of law" need to animate the federal common law that otherwise controls the interpretation of the FLSA's professional exemption.  (A-50.)

As the district court explained, although the interpretation of 29 C.F.R. § 541.304 is an issue of federal common law, "[i]t does not follow . . . that [its] content . . . must be wholly the product of a federal court's own devising." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991). (A-50.)  Rather, the Supreme Court established a "presumption that state law should be incorporated into federal

11

common law" where "parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen*, 500 U.S. at 98. (A-51.)

In reaching its conclusion, the district court discerned that adopting state law standards in interpreting the term "practice of law" under 29 C.F.R. § 541.304 would not "'frustrate specific objectives of the federal programs.'" *Id.* (A-50.) (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)) (alterations in original). To the contrary, the district court determined that like the definition of domestic relations in *De Sylva* and the definition of real property in *Reconstruction Fin. Corp.*, the definition of the practice of law is "primarily a matter of state concern."[3] (A-51.) As the district court explained, "States regulate almost every aspect of legal practice: they set the eligibility criteria and oversee the admission for would-be lawyers, promulgate the rules of professional ethics, and discipline lawyers who fail to follow those rules, among many other

---

[3] In *De Sylva v. Ballentine*, the Supreme Court held that because "there is no federal law of domestic relations, which is primarily a matter of state concern," the term "children," as used in the federal Copyright Act, must be interpreted according to state law. 351 U.S. 570, 580 (1956). Additionally, in *Reconstruction Fin. Corp. v. Beaver Cnty., Pa.*, the Supreme Court held that a federal statute's use of term "real property" adopts state law because "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws." 328 U.S. 204, 210 (1946).

12

responsibilities."[4] (A-51.) Absent an express definition of the practice of law, it is therefore appropriate to rely on state standards in defining the practice of law. *See De Sylva*, 351 U.S. at 580; *Reconstruction Fin. Corp.*, 328 U.S. at 210.

Next, the district court recognized that 29 C.F.R. § 541.304 "explicitly links the term 'practice of law' with state licensing requirements." (A-51.) Indeed, "the 'practice' contemplated by the rule is practice pursuant to a valid license, [and] [s]ince the licensing of lawyers is the exclusive province of the states, state law should also furnish the rule for whether an employee's work constitutes the practice of law pursuant to a license." (A-51.) As the district court recognized, the DOL expressly recognized the logic of the rule when it rejected a proposal to include architects and engineers in the professional exemption, reasoning that:

> The practice of law and medicine has a long history of *state* licensing and certification; the licensing of engineers and architects is relatively recent. While it is impossible for a doctor or lawyer legally to practice his profession without a certificate or license, many architects and engineers perform work in these fields without possessing licenses, although failure to hold a license may limit their permissible activities to those of lesser responsibilities.

Wage and Hour and Public Contracts Divisions, U.S. Department of Labor, Report and Recommendations of the Presiding Officer at Public Hearings on Proposed Revisions of Regulations, Part 541, at 77 (1949) (emphasis added); *see also Belt v.*

---

[4] In addition to the state responsibilities identified by the district court, among other things, states regulate reciprocal admission for years practiced in another jurisdiction, establish and regulate continuing education requirements, and set forth *pro bono* requirements.

*EmCare, Inc.*, 351 F. Supp. 2d 625, 629 (E.D. Tex. 2005) (recounting history of DOL revisions to professional exemption regulations). (A-51 – A-52.) Thus, "it is a lawyer's license and his or her practice pursuant to that license that triggers the professional exemption. That the former is governed by state law strongly suggests that the latter should be as well." (A-52.)

The district court further held that there is no "distinct need for nationwide legal standards" on this issue, and Lola has cited no "express provisions in analogous statutory schemes [that] embody congressional policy choices readily applicable to the matter at hand." *Kamen*, 500 U.S. at 98. (A-52.) It is evident that 29 C.F.R. § 541.304 structurally and implicitly adopts state law standards by specifically exempting only a lawyer practicing pursuant to a valid law license issued by a state.

Against the Supreme Court's admonition to follow existing state law definitions where they exist rather than create new federal definitions, the district court's conclusion that the term "practice of law" should be interpreted in accordance with state law should be affirmed.[5]

---

[5] However, if this Court determines a federal standard is appropriate, Lola would still be engaged in the practice of law and thus exempt under the FLSA. *See* Section VII, *infra*.

## IV. DISCOVERY IS NOT NEEDED TO DETERMINE THE STATE WITH THE GREATEST INTEREST IN APPLYING ITS DEFINITION OF THE "PRACTICE OF LAW"

As an initial matter, Lola's plea for discovery and belated effort to claim that a state law other than North Carolina should apply is not properly before this Court. Lola waived any choice-of-law argument by failing to address this issue in the district court. Generally speaking, a party abandons any objection that it does not make. *See Puckett v. United States*, 556 U.S. 129, 134 (2009). "[A] federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). *See also United States v. Slade*, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."); *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal. . . . In short, this Court does not 'review' that which was not presented to the district court.").[6] Of course, litigants may not waive issues that go to the power of the courts to hear a case. *See, e.g., Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites*

---

[6] This Court will ordinarily not decide an issue first presented on appeal unless "necessary to avoid manifest injustice." *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir. 1994) (internal quotes omitted). Lola cannot identify any injustice in confining the review on appeal to the issues raised below in the district court.

*de Guinee*, 456 U.S. 694, 702 (1982). However, choice-of-law questions do not go to the court's jurisdiction. *See Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 174-178 (3d Cir. 1995) (en banc). Thus, choice-of-law issues may be waived.[7]

It is clear that Lola would like to elect a different state law to apply here because he is unhappy with the result which flows from the district court's application of North Carolina law. However, Lola failed to identify and argue in his underlying opposition to Defendants-Appellees' motion to dismiss that: (1) a conflict existed between state laws; (2) a specific state law should apply; and (3) discovery was needed to determine which state had a potential interest. Since Lola chose not to litigate these fundamental choice-of-law questions before the district court, he should not be permitted to do so now on appeal.

Furthermore, the Amended Complaint supplied sufficient facts for the district court to conduct a thorough choice-of-law analysis. Contrary to Lola's contention, courts routinely engage in a choice-of-law analysis at the motion to dismiss stage without the need for discovery. It is widely accepted, in this Circuit and elsewhere, that choice-of-law issues are amenable to resolution on a motion to dismiss when, such as the case here, there is a sufficient factual basis to make a choice-of-law determination. *See Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 690 F.3d 98, 112-14 (2d Cir. 2012) (affirming dismissal of claim after engaging in

---

[7] *See, e.g., Neely*, 63 F.3d at 180 (collecting cases on waiver of choice-of-law provision when issue not raised by parties before district court).

choice-of-law review without lower court record developed through discovery);
*Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010)
(rejecting plaintiff's argument that it was premature to make choice-of-law
determination at motion to dismiss stage, finding decision about whether choice-
of-law issue is ripe or premature should be made on case-by-case basis depending
on facts presented).

Here, Lola's Amended Complaint provides sufficient facts to conduct a
choice-of-law analysis. First, as Lola acknowledges, he is (1) a resident of North
Carolina, (2) a licensed attorney,[8] (3) engaged to review documents in North
Carolina, (4) for litigation pending before the Northern District of Ohio, and (5)
Tower and Skadden have offices in New York. (A-17, ¶¶4,7,9; A-21, ¶30; App.
Br. 13.)

The cases Lola cites for the proposition that courts refrain from making
choice-of-law determinations at the motion to dismiss stage are non-binding and
factually distinguishable, as those cases acknowledged that the facts relevant to
their individual resolution were not readily discernable. *See N. Amer. Tech Servs.*

---

[8] While not alleged in the Amended Complaint, it is undisputed that Lola is
licensed in California. Lola's counsel stated at a pre-motion conference before the
district court, "I have to say, [Lola is] licensed in California," to which the district
court accepted as true: "Lola's counsel represented to the Court that Lola is in fact
licensed in California, which Defendants did not dispute. . . . [t]he Court assumes
this representation to be correct[.]" (A-35; A-48.) Similarly, Lola has confirmed
his state of licensure before this Court. *See* App. Br. 14 ("California . . . is the state
of Lola's licensure[.]").

*v. V.J. Technologies, Inc.*, No. 10 CV 1384, 2011 U.S. Dist. LEXIS 111816, at *4-8 (D.Conn. Sept. 29, 2011) (granting motion to dismiss in part and reserving a choice-of-law analysis because of factual dispute about where a party executed a key document and because of the "complexity" of case involving nine causes of action sounding in contract and tort, including breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, quantum meruit, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, violation of the Connecticut Unfair Trade Practices Act, and unfair competition); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (excluding extraneous material submitted in conjunction with a motion to dismiss, denying motion to dismiss and reserving choice-of-law analysis in complex dispute involving allegations of employees working in Massachusetts, New York and Shanghai misappropriating confidential information, soliciting employees and customers, tortiously interfered with contracts, breached covenants of good faith and fair dealing, unfairly competed, and breached fiduciary duties).

Lola's argument only underscores the impermissibility of a plaintiff pleading by omission. Lola's unfounded claim that the Amended Complaint fails to plead enough facts to conduct a choice-of-law analysis is particularly deleterious and prejudicial in circumstances where Lola − a licensed attorney − seeks to embark on what would be a tremendously burdensome and expensive national discovery

expedition. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 604 (7th Cir. 2009) (fishing expeditions cost both parties, and the court, valuable time and resources and are therefore not permitted). Allowing Lola to conduct discovery in this manner in order to piece together a claim would undermine the purpose of Fed. R. Civ. P. 12(b)(6), "which is to streamline[ ] litigation by dispensing with needless discovery and factfinding" where the plaintiffs have failed to plead facts sufficient to state a claim under the law. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Since Lola has not shown that there is any state law that, if applied, would warrant a different outcome than North Carolina law, there is no basis for the Court to engage in lengthy choice-of-law analysis, let alone grant Lola discovery in this regard. As set forth in detail below, North Carolina has the greatest interest in supplying the definition of "practice of law" for purposes of the FLSA.

## V. THE DISTRICT COURT CORRECTLY CONCLUDED THAT NORTH CAROLINA'S DEFINITION OF THE "PRACTICE OF LAW" APPLIES

After holding that the "content of [29 C.F.R. § 541.304] should be determined in accordance with state law" (A-53), the district court held that federal choice-of-law principles apply to determine *which* state's definition of the practice of law should be applied, a conclusion that Lola does not dispute. *See* App. Br. 9 ("Federal choice of law principles apply in this case, for the reasons set forth by

19

the District Court.").  Under federal choice-of-law principles, the court must apply "the law of the jurisdiction having the greatest interest in the litigation."  *Eli Lilly Do Brasil, Ltda v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) (citation and internal quotation marks omitted).  Using this standard, the district court correctly concluded that North Carolina had the greatest interest in applying its definition of the "practice of law" to Lola's claims.

### A.    North Carolina's Paramount Interest In Regulating Employees In The State Is Clear

The district court concluded that "North Carolina's interest in regulating employment . . . within its own borders" outweighed the interest that other states may have in applying their definition of the practice of law, and thus appropriately held that North Carolina's definition of the "practice of law" governed.  (A-57.) As the district court held, North Carolina is the jurisdiction with the greatest interest in applying its definition of the practice of law because "Lola performed all of the work in North Carolina and North Carolina is the state with the most interest in regulating the legal practice of individuals within its borders."  (A-55.)

To reach its conclusion, the district court relied on the Restatement (Second) of Conflict of Laws.  *Eli Lilly*, 502 F.3d 78, 81 ("when conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws"); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 14 (2nd Cir. 1996) ("federal courts frequently

consult the Restatement (Second) of Conflict of Laws" in crafting federal conflict of law principles). The district court held that choice-of-law principles as articulated by the Restatement require the court to apply the ***local law of the state that the services, or a major portion of the services, are rendered***. Restatement (Second) of Conflict of Laws, § 196 (emphasis added). (A-55.)

"[T]he regulatory interest of the state in which the employment is performed . . . supports the application of a services-rendered rule in the FLSA context." (A-56.) As the Supreme Court has held, a state has broad authority to regulate employees who work in its state:

> States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety are only a few examples. State laws requiring that employers contribute to unemployment and workmen's compensation funds, laws prescribing mandatory state holidays, and those dictating payment to employees for time spent at the polls or on jury duty all have withstood scrutiny. Federal labor law in this sense is interstitial, supplementing state law where compatible, and supplanting it only when it prevents the accomplishment of the purposes of the federal Act.

*Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985) (citation and internal quotation marks omitted). It is beyond dispute that states have a strong interest in ensuring that employees in the state are paid correctly, and due to this interest, the FLSA explicitly contemplates that states may establish more generous wage

protections.  29 U.S.C. § 218(a).  Though the FLSA sets a national floor for wage protection, due to the state's broad authority to regulate employment relationships, states are free to provide higher levels of protection to the citizens who work in their state.  *See Singh v. City of New York*, 524 F.3d 361, 372 n.10 (2d Cir. 2008) ("[w]e note that the FLSA provides only a floor as to when an employer must compensate employees for their time"); *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990) ("[t]he purpose behind the FLSA is to establish a national floor under which wage protections cannot drop . . . .").

Cognizant of a state's strong interest in ensuring employees working within its borders are properly paid, courts frequently hold that whether a particular state's wage laws apply to a particular employee turn on whether that individual was physically working within the state.  For example, courts within this district have held that the New York Labor Law does not apply to workers laboring outside of New York.  *See*, *e.g.*, *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013) (the New York Labor Laws "contain no clear statement of intended extraterritorial effect . . . . Indeed, the purpose of this area of the labor law is clearly to protect workers laboring in New York. Nothing in the statute suggests that the legislators intended to give persons who were outside New York the right to

come to New York to sue their employers") (internal quotations and alterations omitted).[9]

The district court correctly concluded that the law of North Carolina, the state in which Lola rendered his employment services, applies. North Carolina has clearly articulated its strong interest in regulating employment within its borders and ensuring that employees within the state are properly paid in the North Carolina Wage and Hour Act:

> The public policy of this State is declared as follows: The wage levels of employees, hours of labor, payment of earned wages . . . are subjects of concern requiring legislation to promote the general welfare of the people of the State. . . .

N.C. Gen. Stat. § 95.25.1(b). North Carolina courts have likewise recognized that the state's wage and hour laws (which mirror the FLSA[10]) are "for the benefit of

---

[9] This holding is reached with respect to other states' wage laws. *See, e.g.*, *Wooley v. Bridgeview Bank Mortgage Co.*, No. 14 C 5757, 2015 WL 327357, at *2-3 (N.D. Ill. Jan. 23, 2015) (Illinois Minimum Wage Law not applicable to employees who "worked in [ ] Kansas . . . reported their hours there, were paid there and were allegedly undercompensated there"); *Somasekharan v. Lawrence & Associates, Inc.*, No. 07-2087, 2007 WL 2680954, at *5-6 (C.D. Ill. July 13, 2007) (under choice-of-law analysis, Illinois interest in regulating employment of employees working in the state outweighed the interest of Missouri, the state where employment agreement was signed, and thus Illinois wage laws regarding overtime and minimum wage applied).

[10] *See, e.g.*, N.C. Gen. Stat. § 95-25.14(b)(4) (exempting from the North Carolina Wage Act "any person employed in a bona fide executive, administrative, professional or outside sales capacity, as defined under the [FLSA]")

North Carolina residents." *Sawyer v. Market America, Inc.*, 661 S.E.2d 750, 753 (N.C. Ct. App. 2008); *see also Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 563 S.E.2d 47, 51 (N.C. Ct. App. 2002) ("The Wage and Hour Act was enacted to safeguard the hours worked and the wages paid to the people of the State . . .") (internal quotations omitted).

Because North Carolina has the strongest interest in regulating employment within its borders, its definition of the practice of law outweighs the interests that any other state may potentially have.

## B. North Carolina's Interest Outweighs The Interests Of Any Other State

Lola's contention that "North Carolina has no interest in applying its practice of law definition to Lola's work" is ludicrous. (App. Br. 20.) Lola conflates the states which may have the greatest interest in whether Lola was paid properly for his employment with the states that may be implicated in a malpractice suit or attorney disciplinary hearing. (App. Br. 13-17.) North Carolina has a strong interest in applying its "practice of law" definition by virtue of the fact that Lola was employed in North Carolina and that he rendered his services in North Carolina.

1.   Applying The Law Of An Attorney's License Creates An Unworkable Standard When Attorneys Are Licensed In Multiple Jurisdictions

Contrary to Lola's argument, the state of Lola's licensure, California, does not have a stronger interest than North Carolina in applying its practice of law definition to his FLSA claim.  (App. Br. 14.)  The district court considered and disposed of this argument, finding that though "there may be some superficial appeal" to applying the definition of the state of licensure, "it is ultimately unpersuasive." (A-56 – A-57.)

As the district court correctly stated, "the holder of a law license can practice law pursuant to that license outside of the jurisdiction that issued it." (A-57.)  For example, many jurisdictions permit licensed out-of-state attorneys to appear before their courts "*pro hac vice*."  (A-57.)  Furthermore, "choosing the law of the state of licensure would prove unworkable where – as is often the case – an employee holds law licenses in more than one state."  (A-57.)  Thus, the district court's services-rendered rule prevails.  Not only is it consistent with the spirit of the FLSA, but "[e]mployers can predict in advance where their employees are working." (A-55.)  Indeed, application of Lola's proposal in the context of a FLSA "collective action" may result in analyzing different definitions of practice of law for every putative plaintiff.

25

2. Applying The "Jurisdiction At Which A Lawyer's Work Is Directed" Has No Bearing On Lola's FLSA Action And Creates An Unworkable Standard When Attorneys Provide Advice In Multiple States

Ignoring the fact that he brought an FLSA claim for overtime, Lola contends that the services-rendered standard is incorrect, and instead purports that the "state for whose citizen(s) [his] work was used has the strongest interest in regulating whether or not [he] engaged in the practice of law" for purposes of overtime. (App. Br. 17.)

Lola's myopic view of the "practice of law" ignores the plain and obvious fact that many attorneys "direct work" in multiple jurisdictions for multiple clients at a time. For instance, an employment attorney, based in New York, but licensed in New York, New Jersey and Massachusetts may prepare an employee handbook containing federal and state requirements for a client with office locations in New York, New Jersey and Massachusetts. Thus, the attorney is "directing work" toward multiple locations. Such a rule proposed by Lola "would surely lead to chaos, since employers would be unable to predict ex ante whether they were, in fact, complying with the requirements of the FLSA." (A-55.)

To reach his unworkable standard, Lola contends that in the absence of case law describing which state's interests are most relevant to defining "practice of law" for FLSA purposes, "authorities describing states' interests in regulating the practice of law – whether through attorney discipline, actions based on

26

unauthorized practice law statutes, or legal malpractice cases – are instructive."
(App. Br. 15.)

But, the litany of authority cited by Lola for this proposition has no bearing
on which state has the greatest interest in regulating Lola's employment
relationship for purposes of determining whether he was properly classified as
exempt. Indeed, several of the cases highlight the need for a more predictable
services-rendered rule for FLSA purposes because the cases identify scenarios in
which attorneys perform services in multiple states. *See, e.g.*, *Spivak v. Sachs*, 16
N.Y.2d 163 (N.Y. 1965) (fee dispute involving California lawyer who performed
services in New York related to a Connecticut divorce). Ultimately, the line of
cases that Lola cites to regarding malpractice and attorney discipline are nothing
more than red herrings.[11]   (App. Br. 15-16.) Even if such a state did have an

---

[11] *Chandris, S.A. v. Yanakakis*, 668 So.2d 180 (Fla. 1996) (dispute over attorney fees); *Ranta v. McCarney*, 391 N.W.2d 161 (N. Dak. 1986) (same); *Spivak*, 16 N.Y.2d 163 (same); *Birbrower v. Super. Ct. of Santa Clara County*, 949 P.2d 1 (Cal. 1998) (same); *Clarendon America Insurance Co. v. Hickok*, 370 Ark 41 (Ark. 2007) (nullifying appeal filed by out-of-state attorney); *Columbus Bar Assn. v. Thomas*, 109 Ohio St.3d 89 (Ohio 2006) (legal assistant who independently represented clients engaged in the unauthorized practice of law); *Washburn v. Soper*, 319 F.3d 338 (8th Cir. 2003) (attorney malpractice claim); *Bobbitt v. Milberg, LLP*, 285 F.R.D. 424 (D. Ariz. 2012) (same); *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 233 F. Supp. 2d 171 (D. Mass. 2002) (same). Furthermore, *Birbrower* should be given no weight. Following *Birbrower*, the California legislature promptly passed legislation overruling the case holding. *See* Cal. Civ. Proc. Code § 1282.4 (providing an arbitration exception to the unauthorized practice of law rules); *see also Prudential Equity Group, LLC v. Ajamie*, 538 F. Supp.2d 605, 608 (S.D.N.Y. 2008) (finding the *Birbrower* case to

interest, it could not override North Carolina's interest in ensuring that workers in its state are properly paid and not denied overtime benefits due to a misclassification.[12]  The district court's analysis that North Carolina's interest outweighed any potential interest of the state of licensure applies equally to the state for whose citizens the work was used – any interest that state may have is "outweighed by North Carolina's interest in regulating employment . . . within its own borders."  (A-57.)

3.    A Client's Location Has No Bearing On This Analysis

Lola continues to grasp for straws by alleging that one must consider where a client is located to determine which state informs the definition of "practice of law." However, once again Lola offers an unworkable standard.  First, it is not uncommon for an attorney to conduct work for multiple clients, located in multiple jurisdictions.  Second, not all legal work is conducted in courts. Many attorneys counsel national clients, such as corporations.  Corporate clients may be located in (*i.e.* citizens of) multiple states. Indeed, 28 U.S.C. § 1332(c)(1) provides that a

---

be "controversial" and not worthy of any weight); *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 801 N.E.2d 1017, 1026 (App. Ct. Ill. 2003) (declining to follow *Birbrower* and noting that both the Restatement and ABA Commission criticized the holding).

[12] Because the facts set forth in the Amended Complaint clearly demonstrate that no state could have an interest paramount to North Carolina's, there is no need for discovery to determine the state for whose citizens Lola's work was used.  (*See* Point IV, *supra*).

corporation shall be deemed to be a citizen of every State by which it has been incorporated *and* of the State where it has its principal place of business. Furthermore, the citizenship of an LLC is determined by the citizenship of each of its members. *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (observing that an LLC is considered to have the citizenship of each of its members). Requiring an employer to engage in this analysis for FLSA purposes is not feasible.[13]

Ultimately, it is inescapable that Lola's propositions that the state with the strongest interest is the state for whose citizen(s) Lola's work is performed or where the work is directed are unfeasible in the context of multi-party litigations, counseling national clients or conducting legal work for corporations or other such business entities. As the district court noted "certainty, predictability and uniformity of result" are factors underlying all choice-of-law issues (A-56), which

---

[13] Lola's reliance on *Simons v. Steverson* and *Scariano v. Justices of the Sup. Ct. of the State of Ind.* is also misplaced. (App. Br. 17.) In *Simons*, the court determined that California can exercise personal jurisdiction over an attorney licensed in California but who resided in New York when he performed legal services for California residents. 88 Cal. App. 4th 693 (Ct. App. 2001). That an attorney's physical presence in the state is unnecessary to subject that attorney to personal jurisdiction further supports the need for a services-rendered rule in the FLSA context, especially for attorneys with multi-jurisdictional practices. Furthermore, *Scariano* addresses a constitutional challenge to a bar rule regarding conditional licensing for attorneys. 852 F. Supp. 708 (S.D. Ind. 1994). The court held that an Indiana bar admission rule requiring applicants for a conditional license to practice predominantly in Indiana did not violate the equal protection or commerce clauses of the Constitution. This case does not inform which state has the greatest interest in defining the term in an FLSA action.

further supports the district court's application of the "services-rendered" rule. The services-rendered standard provides certainty and predictability as to which state's definition applies. "While there may be scenarios in which the services-rendered rule could be tested, it can hardly be said that the alternative rules are in any way superior." (A-57 n.8.) Indeed, for the reasons referenced above, they would in each instance be far inferior.

## VI. THE DISTRICT COURT CORRECTLY CONCLUDED THAT LOLA WAS ENGAGED IN THE PRACTICE OF LAW UNDER NORTH CAROLINA'S DEFINITION

The district court correctly held that Lola was engaged in the practice of law under North Carolina law. North Carolina General Statutes define the practice of law as "performing any legal service for any other person, firm or corporation, with or without compensation, specifically including . . . assisting by advice, counsel, or otherwise in any legal work[ ] and to advise or give opinion upon the legal rights of any person, firm or corporation" and provides that any reference to particular acts included within the definition "shall not be construed to limit" the general definition of the term. N.C. Gen. Stat. § 84-2.1; *see also id.* § 84-4 ("it shall be unlawful for any person or association of persons except active members of the Bar, for or without a fee or consideration, to give legal advice or counsel, [or] perform for or furnish to another legal services"). As the district court stated,

30

North Carolina's definition of the practice of law plainly encompasses, "at the very least," the provision of "legal services." (A-58.)

As the district court observed, the North Carolina State Bar (the "Bar") issued a formal ethics opinion elaborating on the term "legal services" in 2007, which instructively elaborates on the North Carolina statute. The Bar addressed the question: "May a lawyer ethically outsource legal support services abroad, if the individual providing the services is either a nonlawyer or a lawyer not admitted to practice in the United States (collectively 'foreign assistants')?" In a formal ethics opinion, the Bar's Ethics Committee responded:

> A lawyer may use foreign assistants for administrative support services such as document assembly, accounting, and clerical support. A lawyer may also use foreign assistants for limited *legal support services* such as *reviewing documents; conducting due diligence; drafting contracts, pleadings, and memoranda of law; and conducting legal research*. Foreign assistants may not exercise independent legal judgment in making decisions on behalf of a client. . . . The limitations on the type of legal services that can be outsourced, in conjunction with the selection and supervisory requirements associated with the use of foreign assistants, insures that the client is competently represented. *See* Rule 5.5(d). Nevertheless, when outsourcing legal support services, lawyers need to be mindful of the prohibitions on unauthorized practice of law in Chapter 84 of the General Statutes and on the prohibition on aiding the unauthorized practice of law in Rule 5.5(d).

N.C. State Bar Ethics Committee, 2007 Formal Ethics Op. 12 ("Ethics Op. 12") (Apr. 25, 2008) (emphasis added). As the district court correctly concluded, the

ethics opinion clearly demonstrates that under North Carolina law, document review is the practice of law:

> Three aspects of the ethics opinion are significant here. First, the opinion groups document review under the class of tasks considered to be 'legal support services,' along with other quintessentially legal tasks like 'drafting contracts, pleadings, and memoranda of law[,] and conducting legal research.' Lola does not dispute – nor could he – that these other tasks fall comfortably within the heartland of legal practice. Document review, in the view of the Ethics Committee, belongs in the same category. Second, the ethics opinion draws an explicit distinction between legal support services, like document review, and 'administrative support services,' like 'document assembly, accounting, and clerical support.' . . . In the view of the Ethics Committee, the former is legal work, while the latter is administrative or clerical work. Third and finally, the ethics opinion emphasizes that lawyers must not permit non-lawyers to perform legal support services, like document review, without supervision . . . . In other words, document review, like other legal support services, constitutes the practice of law and may be lawfully performed by a non-lawyer only if that non-lawyer is supervised by a licensed attorney.

(A-58 – A-59.)

Lola's contention that only "some" document review may be classified as the "practice of law" is belied by the plain language used in the ethics opinion and the corresponding state statute defining the practice of law. (App. Br. 34-35.) Moreover, it is clear from the face of the Amended Complaint that the document review performed by Lola for a complex multi-district litigation (A-9, ¶9) falls squarely within the definition of "practice of law."

Furthermore, Lola's argument that the purpose of North Carolina's definition and regulation of the practice of law – to "protect the public against incompetency and dishonesty in an area of activity affecting general welfare" – can only be advanced by encompassing tasks that require the exercise of legal judgment and discretion is misguided. (App. Br. 35.) As the district court explained, nowhere in North Carolina's statutory definition of the "practice of law" or in the Bar's ethics opinion does it state that the practice of law must involve "specialized knowledge, training, and judgment."[14] *See* N.C. Gen. Stat. §§ 84-2.1, 84-4; Ethics Op. 12. (A-59.) More importantly, the document review Lola performed did entail the application of his specialized knowledge, training, and judgment, and thus even under Lola's purported standard he was engaged in the practice of law. By virtue of his legal education and licensing as an attorney, Lola has specialized knowledge and training, which he applied to make judgment calls regarding, among other things, the relevance, responsiveness, and privilege of the

---

[14] As the district court observed, there is some North Carolina authority for the proposition that the exercise of legal judgment is *sufficient* for an activity to constitute the practice of law, but these cases do not suggest that the exercise of legal judgment is *necessary* for the practice of law or that the absence of such an exercise of legal judgment takes the activity outside of the practice of law. *Cf. N. Carolina State Bar v. Lienguard, Inc.*, No. 11 CVS 7288, 2014 WL 1365418, at *10 (N.C. Super. Apr. 4, 2014); *LegalZoom.com, Inc. v. N. Carolina State Bar*, No. 11-cvs-15111, 2014 WL 1213242, at *13 (N.C. Super. Mar. 24, 2014). (A-59 – A-60.)

documents he reviewed.  Routine or not, document review conducted by a licensed attorney is the practice of law.  *See* Section VII, *infra*.

Lola curiously contends that it is more appropriate for this Court to rely on *other* states' definitions of the practice of law to divine the meaning of "legal services" as used in North Carolina's statutory definition, rather than rely on the North Carolina Bar ethics opinion, because those *other* states' definitions are more consistent with the purpose of North Carolina's definition of the practice of law. (App. Br. 27; 35.)  The cited states purportedly define the practice of law as involving some level of legal judgment and discretion, yet these references are inconsequential because Lola cites no North Carolina authority for the proposition that North Carolina assigns the cited states any weight when interpreting North Carolina law, or that "legal services" in North Carolina depends on any amount of judgment and discretion.  Accordingly, under North Carolina's definition of the practice of law, Lola is exempt from the FLSA.

## VII.  EVEN IF A FEDERAL STANDARD IS APPLICABLE TO THE FLSA DEFINITION OF "PRACTICE OF LAW," LOLA WAS STILL ENGAGED IN THE PRACTICE THEREOF AND AN EXEMPT PROFESSIONAL UNDER THE LAW

Lola contends that a federal definition should be utilized to define the practice of law under 29 C.F.R. § 541.304(a)(1).[15] However, even if a federal

---

[15] Contrary to Lola's assertion, adopting state standards for the definition of practice of law does not render choice-of-law analysis "impossible" in complex

definition is applicable, Lola was still engaged in the practice of law and thus exempt from the FLSA's overtime requirements.

### A. *Oberc* Relied On Federal Principles To Conclude That Lola Was Engaged In The Practice Of Law

In 2013, *Oberc v. BP LLC*, was the first federal court to address the application of a federal practice of law definition; however, Lola has ignored this case entirely.[16] In *Oberc*, plaintiff was a contract attorney licensed to practice law in Michigan and performing a document review in Texas. 2013 WL 6007211, at

---

and multidistrict litigation. (App. Br. 24.) Indeed, the primary purpose of choice-of-law analysis is for courts to make judicial determinations as to what principles and laws apply when multiple jurisdictions are implicated in litigation. *See generally,* Restatement (Second) Conflict of Laws § 1, Reason for the Rules on Conflict of Laws (1971). Moreover, as set forth in Section V.B., *supra*, the services-rendered rule dispenses with such uncertainties. It should be noted that Lola cites to no authority to support his unfounded proposition. Rather, Lola cites *Schomer v. Bd. of Bar Examiners*, 987 N.E. 2d 588 (Mass. 2013) which supports a finding that contract attorneys are engaged in the practice of law. (App. Br. 25.) The issue before the Court in *Schomer* was whether a lawyer's work as a contract attorney in New York counted toward Massachusetts's practice of law requirement for admission to the bar without examination. The court ultimately concluded, without engaging in a choice-of-law analysis, that *Schomer* did satisfy the requirement mandating engagement in the active practice of law for at least five of the seven years immediately preceding the filing of his petition for admission on motion.

[16] Though the district court discounted *Oberc* because it "did not articulate why the exercise of legal judgment was the standard for the practice of law," the lack of analysis does not mean that *Oberc* cannot be relied upon. As set forth in *Oberc*, the document review performed by a contract attorney was so obviously and inescapably the practice of law that there was simply no need to set forth a practice of law definition to determine that Lola was an exempt professional under the FLSA.

*1.  Like Lola, Oberc alleged that he was non-exempt from the FLSA's overtime pay requirements because he only performed routine work that required no legal analysis or lawyerly judgment, as he was confined by detailed protocols for conducting the document review.  *Id.* at *3.  The court rejected this argument and dismissed the overtime claim, holding that Oberc was engaged in the practice of law and an exempt professional under the FLSA.  In reaching this conclusion, the court held:

> [a]ttorneys engaged in document review must assess the relevance and responsiveness of each document, along with any privilege issues presented. The mere fact that the task may be routine or constrained by guidelines does not make it any less "legal."

*Oberc*, 2013 WL 6007211, at *6.

The court did not look to any state definitions to discern what constitutes the practice of law; rather, the court cited only to federal law, *i.e.*, 29 C.F.R. § 541.300 and 29 C.F.R. § 541.304.  *Id.* at *6-7.  Under the court's reasoning in *Oberc*, Lola was clearly engaged in the practice of law.

**B.  Federal Courts Have Consistently Held That Document Review, Conducted By Contract Attorneys, Is The Practice Of Law**

Any federal standard should be fashioned from the legal protections bestowed upon a licensed attorney's work product and federal court guidance, which does not require a "duties" analysis.  Federal courts have consistently held that document reviews by contract attorneys are protected by privilege, and that

attorneys' fees are appropriate for contract attorneys performing document review. Thus, document review, conducted by contract attorneys, is the practice of law.

Lola contends that because his job duties were "routine" and he was "required to review documents under very specific guidelines," he was not practicing law. (A-20 – A-21, ¶¶24, 25, 31.) However, Lola's conclusory description of the work he performed on the litigations as "routine" (A-20, ¶25) is irrelevant and belied by his allegations and common sense as discovery is unique to every case. Discovery work on large, complex litigations that requires attorneys to follow protocols (A-20, ¶29) can hardly be characterized as "routine." Moreover, as the district court noted, "the exercise of legal judgment and discretion is [not] the *sine qua non* of legal practice." (A-60.) The district court observed:

> Even undisputedly legal services like the drafting of motion briefs and the negotiating of documents require the performance of tasks – checking cases to make sure quotations are accurately reproduced, confirming citations to the stylistic dictates of the *Bluebook*, ensuring that documents are free of grammatical and typographical errors – that require little to no legal judgment. As junior associates at law firms well know, these tasks are the bread and butter of much legal practice and essential to the competent representation of clients.

(A-60.)

Even accepting Lola's allegations as true, the fact that attorneys are required to follow guidelines to ensure quality and consistency for a particular project does

not alter the *legal* nature of the discovery being performed, nor does it eliminate the need for attorneys to exercise their legal training and legal analysis in assessing each document. *See Oberc*, 2013 WL 6007211, at *6 ("The mere fact that the [document review] task may be routine or constrained by guidelines does not make it any less 'legal.'"). No matter how Lola characterizes the nature of his work, it inherently constitutes the practice of law. There is simply no requirement that an attorney's work rise to a particular level of difficulty or sophistication to constitute the practice of law. *See, e.g.*, *Schomer*, 987 N.E.2d at 592 (lawyer's work as a contract attorney in New York counted toward Massachusetts's practice of law requirement for admission to the bar without examination); *Pulse v. North Am. Land Title Co. of Montana*, 218 Mont. 275, 282, (Mont. 1985) ("drafting or filling in of blanks in printed forms of instruments dealing with land" constitutes the practice of law); *United States v. Hardy*, 681 F. Supp. 1326, 1328-29 (N.D. Ill. 1988) ("[C]ommon sense dictates that the drafting of even a simple complaint or an uncomplicated petition for dissolution of marriage requires at least some degree of legal knowledge or skill . . . [and] thus constitutes the practice of law.").[17]

---

17 Similarly, there is no distinction between a document review conducted by contract attorneys and a document review conducted by law firm associates throughout the United States. Lola's attempt to differentiate himself from a first year associate who is performing the same type of work runs counter to the exemption for attorneys. The exemption does not turn on the idea that one might get assigned more complex legal tasks or asked to attend a client meeting. As the district court observed: "The upshot of 29 C.F.R. § 541.304(d) is that licensed

1. <u>Court's Acknowledge That Document Review Is Of Critical Importance In Litigations</u>

Courts have frequently recognized document review as a task of critical import, particularly in complex litigations. *See, e.g.*, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986) ("[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research . . . ."); *Parrish v. Manatt, Phelps & Phillips, LLP*, C 10-03200, 2011 WL 1362112 at *2 (N.D. Cal. Apr. 11, 2011) ("[t]he tasks of collecting client documents, reviewing those documents, and determining which documents are relevant are essential – and often costly – parts of investigation and discovery [phases of litigation]"). Courts recognize the legal significance of document review in a number of ways.

a. <u>Document Review Is Protected By Privilege</u>

Courts have consistently identified a lawyer's analysis and categorization of documents as opinion work product, holding that such work constitutes the practice of law. *See*, *e.g.*, *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (holding that a lawyer's "selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product"), *cert. denied*, 474 U.S. 903 (1985). Courts

---

attorneys . . . fall in a special class of workers that may be deemed to be professionals even without a fact-intensive inquiry into the nature of their job duties." (A-61.)

grant this opinion work product protection to an attorney's analysis and categorization of documents precisely because such tasks reflect the attorney's thought processes and theories regarding the litigation. *See*, *e.g.*, *Shelton*, 805 F.2d at 1329 ("[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research. . . We believe [counsel's] selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case.").

Courts have found that a party uses reasonable measures to prevent disclosure of privileged documents through use of contract attorneys who are trained to identify privilege issues to review and analyze documents. *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL 651536, at *4 (S.D.N.Y. Feb. 28, 2012) (inadvertent production of privileged documents did not waive privilege where the party took reasonable steps to prevent the disclosure, which included retaining a team of contract attorneys to review voluminous amounts of electronic information); *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, Nos. 09 Civ. 9783, 09 Civ. 9784, 2013 WL 2322678, at *5-6 (S.D.N.Y. May 21, 2013) (no waiver of privilege due to inadvertent production of privileged material because party used reasonable precautions to prevent disclosure, which included review by contract attorneys trained to identify privilege issues).

b. <u>Attorneys' Fees Are Appropriate For Contract Attorneys Performing Document Review</u>

Finally, and most significantly, in granting attorneys' fees for document review, courts have explicitly recognized that document review by contract attorneys constitutes legal work. *See, e.g.*, *In re Tyco Intern., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007) (awarding attorneys' fees over objection because "[a]n attorney, regardless of whether she is an associate with steady employment or a contract attorney whose job ends upon completion of a particular document review project, is still an attorney"); *Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-cv-1992, 2013 WL 410103, at *10 (S.D. Cal. Feb. 1, 2013) (awarding over $391,000 in attorneys' fees for document review performed by contract attorneys); *In re Enron Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 785 (S.D. Tex. 2008) (prevailing party can recover fees for contract attorneys' services at market rates); *In re AOL Time Warner Shareholder Derivative Litigation*, No. 02 Civ. 6302, 2010 WL 363113, at *26 (S.D.N.Y. Feb. 1, 2010) (awarding and multiplying, per a lodestar formula, the fees' charged for temporary contract attorneys' document review).

## C. Lola's Reliance On The ABA Task Force On Model Definition Of Practice Of Law Is Misplaced

While ignoring *Oberc*, Lola attempts to craft a federal definition of the practice of law based on the ABA Task Force on Model Definition of Practice of

Law Recommendation (Aug. 11, 2003) ("ABA Report") *available at* www.americanbar.org/content/dam/aba/migrated/cpr/model-

def/taskforce_rpt_803.pdf (and adopted by some jurisdictions), suggesting that the practice of law "is the application of legal principles and judgment to the circumstances or objectives of another person or entity." (App. Br. at 26-27.) Contrary to Lola's suggestion, the ABA Task Force on the Model Definition of Practice of Law does not support a federal definition for "practice of law." (App. Br. 26, 31.) Lola conveniently cites to the ABA's 10-line Recommendation, neglecting to cite to the ABA Report that details the purpose and parameters of their Recommendation. In the ABA Report, the ABA succinctly sets out the following:

> The Task Force [is] convinced that the necessary balancing test for determining who should be permitted to provide services that are included within the definition of the practice of law is best done at the *state level*. This is consistent with the Task Force's charge to 'consider anew the need to present a model definition . . . and to aid other jurisdictions that may wish to take action.' The Task Force acknowledges that each jurisdiction will weigh the factors provided in the framework in a manner that is best suited to resolving the harm/benefit equation for its citizens.

ABA Report, p. 3 (emphasis added). The ABA lists a number of factors a state may consider weighing when determining whether to utilize any of the ABA's recommended definition in forming its own state-specific definition. *See* ABA Report, Section III.A. Moreover, and most notably, as the district court

acknowledged and as the ABA Report clearly confirms, the ABA recommended provisions are merely *sufficient*, but by no means inclusive of all activities a state can consider and eventually adopt in their definition of practice of law. (A-59 – A-60.) The ABA Report clearly states that: "each jurisdiction should . . . use a balancing process to determine who may provide services that are included within the jurisdiction's definition of the practice of law and under what circumstances, based upon the potential harm and benefit to the public." *See* ABA Report, Section V, p.13. Accordingly, Lola's reliance on the ABA Recommendation is misplaced without the accompanying ABA Report. When the Report and Recommendation are viewed as a whole, it is clear that in no way does the ABA purport to recommend a federal definition − in fact, it recommends just the opposite: a set of principles a state may wish to include in its consideration and ultimate determination on how to define the practice of law within its state.[18] Here, North Carolina has done just that, and it has made its determination, that the practice of law includes document review. *See* Section V, *Supra*.

---

[18] To the extent Lola wishes to rely on ABA for proclamations, the Court should consider that the ABA maintains that contract attorneys are no different than retained attorneys, particularly when viewed in relation to fees. The ABA permits an attorney to bill to a client the services of a contract lawyer as attorneys' fees. *See* ABA Formal Opinion 00-420, p. 2.

1.  Even Under Lola's Baseless Federal Definition, Lola Was Engaged In The Practice Of Law

First, it should be noted that the federal standard that Lola urges this Court to adopt is contrary to the DOL's regulatory framework concerning the professional exemption. As the district court confirmed, the regulation "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" provides that an employee performs "work requiring advanced knowledge" if the work "is predominantly intellectual in character, and . . . [requires] the consistent exercise of discretion and judgment, as distinguished from . . . routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.300-301. Whereas, when applying this regulation, courts must inquire into the primary duties of the employee and whether those duties involve the exercise of judgment and discretion, the regulation pertaining to lawyers and doctors specifically provides that "[t]he requirements of § 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section." 29 C.F.R. § 541.304(d). Succinctly stated by the district court: "The upshot of 29 C.F.R. § 541.304(d) is that licensed attorneys and doctors fall in a special class of workers that may be deemed to be professionals even without a fact-intensive inquiry into the nature of their job duties. To nevertheless engage in such an inquiry under the guise of

parsing the 'practice of law' would be to ignore the plain meaning of 29 C.F.R. § 541.304(d) and the intent of the DOL." (A-61.)

Even if the Court were to engage in a fact-intensive inquiry into the job duties of a contract attorney, which it should not do, Lola would be engaged in the practice of law under his proposed federal definition since Lola used legal principles and judgment to determine the relevance and responsiveness of the documents that he reviewed and to assess any privilege issues. It is indisputable that a party involved in litigation must review and analyze documents to assess, *inter alia*, responsiveness to discovery requests, relevance to claims or defenses, attorney-client privilege or work-product issues, confidentiality concerns and a myriad of other issues. *See Oberc,* 2013 WL 6007211 at *6-7. Additionally, an attorney engaged in document review also must use their legal training in understanding the relevant factual and legal issues pertinent to the litigation, as well as general principles relating to attorney-client privilege.

Therefore, as the district court properly concluded, "the professional exemption for licensed attorneys and doctors applies regardless of whether those individuals meet the salary baseline and regardless of whether they would otherwise qualify as professionals under the primary duty test." (A-60 – A-61.)

45

**D.     The *Henig* Practice Of Law Test Is Mistaken And Not Binding On This Court**

Lola's reliance on *Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, 13 CV 1432 (S.D.N.Y. Dec. 11, 2013), for a federal definition of the practice of law is misplaced.[19]   First, in *Henig*, Judge Abrams mistakenly stated that the issue of what constitutes the practice of law under 29 C.F.R. § 541.304 was one of first impression in the federal courts and completely ignored *Oberc*.[20]   Second, Judge Abrams ignored the Supreme Court's direction in *Kamen* "that state law should be incorporated into federal common law" where - as here - the "parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen*, 500 U.S. at 98.   Third, in her ruling, Judge Abrams reached well beyond the FLSA to construct a three-part federal test to determine the practice of law: "[1] whether the individual at issue renders legal advice to a particular client, [2] whether he holds himself out as an attorney, and [3] whether his duties require him to draw on legal knowledge and judgment[.]"

---

[19] Indeed, the district court appropriately disregarded the *Henig* court's conflated test because, given the differing state standards on what constitutes the practice of law, it creates the possibility that a federal court could apply a definition of "practice of law" that does not track the standard of any state relevant to the matter before the court. *See, e.g.*, Pamela A. McManus, *Have Law License; Will Travel*, 15 GEO. J. LEGAL ETHICS 527, 538 (2002) ("As simple as it sounds to limit the practice of law to lawyers, states have wildly varying definitions of what activities constitute the practice of law.").  (A-53.)

[20] A transcript of the *Henig* hearing is attached as an Addendum to Lola's brief.

46

*Henig*, No. 13-cv-1432, at 7:12-20. However, as the district court noted, the professional exemption, for attorneys, does not require such a specific inquiry into an attorney's individual tasks. *See* C.F.R. § 541.304(d); (A-61) (the notion that a court "should scrutinize [the] precise job responsibilities to determine whether they required legal judgment and discretion . . . is at odds with" the regulatory framework propounded by the Department of Labor).[21]  Accordingly, the district court declined to follow the approach set forth in *Henig*, as this Court should.  (A-53.)

---

[21] The cases cited by Lola in support of Judge Abrams' test are inapposite as those cases were decided under the executive exemption. *See Scott v. SSP Amer., Inc.*, No. 09 CV 4399, 2011 WL 1204406, at * 7 (E.D.N.Y. Mar. 29, 2011) (explaining that an analysis of the an employee's primary duty is required to determine if an employee is an exempt executive under the FLSA); *Guinup v. Petr-All Petroleum Corp.*, No. 5:07 CV 1120, 2010 WL 3338800, at *7 (N.D.N.Y. Aug. 23, 2010) (same). To the extent Lola cites *Pippins*, the Second Circuit held that Audit Associates are exempt from the overtime provisions of the FLSA, rejecting the blanket assumption that routine or highly-structured work assignments rob professionals of their ability to use their independent discretion. *See Pippins v. KMPG*, 759 F.3d 235, 243 (2d Cir. 2014) ("[w]orkers may be found to exercise professional judgment even when their discretion in performing their core duties is constrained by formal guidelines, or when ultimate judgment is deferred to higher authorities"). Indeed, Lola's attempt to belittle the work he performed mischaracterizes the integral nature of privilege review of documents, which is work performed by all attorneys. *See id.* at *245 (rejecting plaintiffs' attempts to "denigrat[e] the work performed by Audit Associates," finding that even "filling out template forms" sufficiently intellectual in character to reflect the exercise of discretion of such professionals).

## CONCLUSION

For the foregoing reasons, this Court should affirm the decision of the district court's order granting Defendants-Appellees' Rule 12(b)(6) motion and dismissing this case with prejudice, and award to Defendants-Appellees such other and further relief as the Court deems appropriate.

Dated: New York, New York
      February 17, 2015

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By s/ *Stephanie L. Aranyos*
   Stephanie L. Aranyos
   Brian Gershengorn
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

Attorneys for Defendants-Appellees
 *Skadden, Arps, Slate, Meagher & Flom
LLP* and *Tower Legal Staffing, Inc.*

48

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,045 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:  New York, New York
       February 17, 2015

                     Respectfully submitted,

                     OGLETREE, DEAKINS, NASH,
                      SMOAK & STEWART, P.C.

                     By s/ *Stephanie L. Aranyos*
                       Stephanie L. Aranyos
                       Brian Gershengorn
                     1745 Broadway, 22nd Floor
                     New York, New York 10019
                     (212) 492-2500

                     Attorneys for Defendants-Appellees
                     *Skadden, Arps, Slate, Meagher & Flom LLP* and *Tower Legal Staffing, Inc.*