# 14-3845-cv

## United States Court of Appeals

### *for the*

### Second Circuit

DAVID LOLA, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

GERALD RUSH,

*Plaintiff,*

– v. –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP,
TOWER LEGAL STAFFING, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

JOSEPH & KIRSCHENBAUM LLP
*Attorneys for Plaintiff-Appellant*
233 Broadway, 5th Floor
New York, New York 10279
(212) 688-5640

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

I.   JURISDICTION ...................................................................... 1

II.  ISSUES PRESENTED FOR REVIEW ................................... 1

III. STATEMENT OF THE CASE ............................................... 2

   A.  Procedural History And Nature Of The Case ............................. 2

   B.  Factual Background ................................................................ 3

IV.  SUMMARY OF ARGUMENT .............................................. 4

V.   ARGUMENT ......................................................................... 7

   A.  Applicable Standard Of Review ............................................. 7

   B.  Motion To Dismiss Standard ................................................. 7

   C.  The FLSA's Professional Exemption ..................................... 8

   D.  If "Practice Of Law" Is Defined By State Law, Discovery Is Needed
       To Identify The State Whose Definition Applies, And The Record Does
       Not Establish That North Carolina Is That State ..................... 9

       i. If a state definition of "practice of law" applies, discovery is
         needed to identify the state whose defition applies in this case ....... 12

       ii. The District Court erred in applying North Carolina law to
         define "practice of law" ................................................... 20

   E.  The Court Should Apply A Federal Definition To "Practice Of Law"
       For FLSA Purposes ............................................................ 23

       i. Defining "practice of law" for FLSA purposes ...................... 26

i

**ii. Applying a federal "practice of law" definition, Lola was not engaged in the practice of law**.............................................................31

**F. Even Under North Carolina's "Practice Of Law" Definition, Lola Was Not Engaged In The Practice Of Law** ......................................33

**VI.   CONCLUSION** ..........................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 7

*Attorney Grievance Comm'n of Md. v. Shaw*, 732 A.2d 876 (Md. 1999) ... 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 7

*Birbrower v. Super. Ct. of Santa Clara County*, 17 Cal. 4th 119 (1998) .... 16,21

*Bobbitt v. Milberg, LLP*, 285 F.R.D. 424 (D. Ariz. 2012) ........................... 18

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) .............................. 24

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338 (3d Cir. 2000) ..... 10

*Chandris v. Yanakakis*, 668 So. 2d 180 (Fla. 1995) .................................... 16

*Clarendon Am. Ins. Co. v. Hickok*, 370 Ark. 41 (2007) .............................. 15

*Columbus Bar Ass'n v. Thomas*, 109 Ohio St. 3d 89 (2006) ....................... 15

*Cont'l Cas. Co. v. Cuda*, 715 N.E.2d 663 (Ill. App. Ct. 1999) ................... 27

*Corporation Venezolana de Fomento v. Vintero Sales Corp.*,
    629 F.2d 786 (2d Cir. 1980) ............................................................. 10

*Denney v. Jenkins & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) .............. 14

*Eli Lilly do Brasil, Ltda v. Fed. Express Corp.*, 502 F.3d 78
    (2d Cir. 2007) ..................................................................................... 9

*Guinup v. Petr-All Petroleum Corp.*, No. 07 CV 1120,
    2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) ............... 29

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) .......................... 8

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010)......................................7

*Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*,
    13 CV 1432 (S.D.N.Y. Dec. 11, 2013)..............................................28,32

*In re Jackman*, 761 A.2d 1103 (N.J. 2000)..................................................27

*In re Koreag, Controle et Revision S.A.*,
    961 F.2d 341 (2d Cir. 1992) .............................................................9,11, 12

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010)...............8

*In re Rowe*, 604 N.E.2d 728 (N.Y. 1992) ....................................................28

*Iowa Sup. Ct. Comm'n on Unauthorized Practice of Law v. Sturgeon*,
    635 N.W.2d 679 (Iowa 2001) ............................................................27

*Judge v. Amer. Motors Corp.*, 908 F.2d 1565 (11th Cir. 1990) .................11,20

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ............................24

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ................................7

*LegalZoom.com, Inc. v. N.C. State Bar*,
    2014 NCBC 9 (N.C. Super. Ct. 2014)................................................35

*Mastafa v. Chevron Corp.*, 770 F.3d 170 (2d Cir. 2014) ...........................7

*N. Amer. Tech. Servs., Inc. v. V.J. Techs., Inc.*, No. 10 CV 1384,
    2011 U.S. Dist. LEXIS 111816, at *7 (D. Conn. Sept. 29, 2011).....12

*Pippins v. KPMG LLP*, 759 F.3d 235 (2d Cir. 2014) .................................*passim*

*Ranta v. McCarney*, 391 N.W.2d 161 (N.D. 1986) ....................................16

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010) .............................................................8

iv

*Scariano v. Justices of the Sup. Ct. of the State of Ind.*,
    852 F. Supp. 708 (S.D. Ind. 1994)....................................................... 17,21

*Schomer v. Bd. of Bar Examiners*, 465 Mass. 55 (2013)............................ 25

*Scott v. SSP Amer., Inc.*, No. 09 CV 4399,
    2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011) ............... 29

*Simons v. Steverson*, 88 Cal. App. 4th 693 (Ct. App. 2001)....................... 17,21

*Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439,
    444 (S.D.N.Y. 2011)........................................................................ 19

*Spivak v. Sachs*, 16 N.Y.2d 163 (1965) ....................................................... 16

*St. Paul Fire & Marine Ins. Co. v. Birch, Steart, Kolasch & Birch, LLP*,
    233 F. Supp. 2d 171 (D. Mass. 2002)................................................. 19

*Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406 (2d Cir. 2008) ........... 7

*State ex rel. Okla. Bar Ass'n v. Running*, 262 P.3d 736 (Okla. 2011)......... 27

*State v. Pledger*, 257 N.C. 634 (1962).......................................................... 21,35

*Washburn v. Soper*, 319 F.3d 338 (8th Cir. 2003)....................................... 18

*Webb v. Rodgers Machinery Mfg. Co.*, 750 F.2d 368 (5th Cir. 1985) ........ 11

## Statutes, Rules, and Regulations

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1331 ..................................................................................... 1

29 C.F.R. § 541.304 .......................................................................... *passim*

29 U.S.C. § 207 ..................................................................................... 1,8

29 U.S.C. § 213 ..................................................................................... 8

Fed. R. Civ. P. 12 ...................................................................... 1,2,7

Ill. Model Rules of Prof'l Conduct R. 8.5 ................................... 18

Ky. SCR 3.020 ............................................................................ 27

Mass. Model Rules of Prof'l Conduct R. 8.5.............................. 18

N.C. Gen. Stat. § 84-2.1 ......................................................... 21,34

N.C. Gen. Stat. § 84-4 ................................................................ 21

N.C. Rules of Prof'l Conduct R. 5.5 ........................................... 34

N.C. Rules of Prof'l Conduct R. 8.5 ........................................ 18,22

Ohio Model Rules of Prof'l Conduct R. 8.5 ............................... 18

Or. Model Rules of Prof'l Conduct R. 8.5 ................................... 18

Pa. Model Rules of Prof'l Conduct R. 8.5 ................................... 18

**Other Authorities**

69 Fed. Reg. 22123-22124 (Apr. 23, 2004) ................................ 25

ABA Model Rules of Prof'l Conduct R. 8.5................................. 17

ABA Task Force on Model Definition of Practice of Law
    Recommendation (Aug. 11, 2003) ..................................... 6,26,31

N.C. State Bar Ethics Comm., 2007 Formal Ethics Op. 12
    (Apr. 25, 2008) .................................................................. 34,35

Restatement (Second) of Conflict of Laws § 6............................ 10,23

Restatement (Second) of Conflict of Laws § 145 ....................... 10

Restatement (Second) of Conflict of Laws § 196 ....................... 23

vi

## I.  JURISDICTION

The District Court had original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff-Appellant David Lola's ("Lola") claim in this action was for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 207.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal from a final order and judgment.  Specifically, this is an appeal from the District Court's dismissal of Lola's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

The District Court's order granting Defendants-Appellees Skadden, Arps, Meagher, Slate & Flom LLP (Skadden) and Tower Legal Staffing Inc.'s ("Tower") motion to dismiss was entered on September 16, 2014.  The judgment was entered on September 18, 2014.  Lola filed his notice of appeal on October 13, 2014.

This is an appeal of a final order and judgment that disposed of all parties' claims.

## II.  ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in granting Defendants' motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).

2. Whether the District Court erred by holding that state law defines "practice of law" as that term is used in the FLSA's regulations.

3. If state law defines "practice of law" for FLSA purposes, whether the District Court erred by holding that North Carolina law supplies the appropriate definition.

4. If North Carolina supplies the appropriate definition of "practice of law," whether the District Court erred by holding that Lola engaged in the practice of law as defined by North Carolina.

5. Whether the District Court erred by holding that based on the allegations in the FAC, Plaintiff engaged in the "practice of law" as that term is used in the FLSA's regulations.

6. Whether the District Court erred by holding that Plaintiff was not entitled to overtime under the FLSA because he was an exempt professional.

## III.   STATEMENT OF THE CASE

### A. Procedural History And Nature Of The Case

Lola filed his Complaint, a putative FLSA collective action, on July 18, 2013 in the Southern District of New York.  (A-3, Dkt. No. 1.)  The Complaint alleged that Skadden and Tower violated the FLSA by failing to pay him and other similarly situated individuals one and a half times their regular rate for overtime hours worked.  (A-8 – A-15.)  Lola filed his FAC on October 3, 2013.  (A-4, Dkt. No. 17.)  On December 6, 2013, Skadden and Tower filed their motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).  (A-5, Dkt. No. 22.)  District Judge

2

Richard J. Sullivan granted the motion to dismiss on September 16, 2014, holding that Lola was a licensed attorney engaged in the practice of law and was therefore exempt from the FLSA's overtime requirements pursuant to 29 C.F.R. § 541.304(a)(1).  (A-6, Dkt. No. 35; A-47 – A-61.)  Judgment was entered, closing the case, on September 18, 2014.  (A-7, Dkt. No. 39; A-62.)

### B. Factual Background

As alleged in the FAC, Lola, an attorney, worked for Tower and Skadden for approximately 15 months beginning April 2012.  (A-17, ¶ 9.)  Lola worked as a temporary contract attorney reviewing documents for Skadden in relation to a multi-district litigation pending in the Northern District of Ohio.  (*Id*.)  Throughout his employment, Lola worked 45 to 55 hours per week.  (A-21,  ¶ 33.)  He was paid his regular rate of $25 per hour for overtime hours worked.  (*Id*. at ¶¶ 32, 34.)  As a contract attorney, Lola was required to follow Skadden's policies and procedures, and his work was directed and supervised by Skadden attorneys.  (A-17, ¶ 11.)  Skadden had the right to terminate Lola's working relationship with Skadden, and a Skadden attorney interviewed Lola for a possible promotion, which he did not receive.  (A-18, ¶ 14.)  Skadden also maintained records of Lola's actual hours worked.  (*Id*. at ¶ 13.)  Lola worked in North Carolina.  He is not licensed to practice law in either North Carolina or Ohio.  (A-21, ¶ 30.)

Lola was provided with and had to follow Skadden's detailed protocols to follow in reviewing documents, including a list of search terms and corresponding categories.  (A-20, ¶ 26.)  Lola's sole responsibility while working for Defendants was to review documents by "(a) looking at documents to see what search terms, if any, appeared in the documents, (b) marking those documents into the categories predetermined by Defendants, and (c) at times drawing black boxes to redact portions of certain documents based on specific protocols that Defendants provided."  (*Id*. at ¶ 28.)  Lola was unable to exercise any independent judgment or discretion in performing his job, and he did not engage in any legal analysis.  (*Id.* at ¶ 29.)

## IV.   SUMMARY OF ARGUMENT

The District Court's order and judgment should be reversed because (1) applying federal choice of law principles on a motion to dismiss, discovery is needed to determine which state's practice of law definition applies here, and that state is likely not North Carolina; (2) even under North Carolina's practice of law definition, Lola did not practice law; (3) in any event, a federal definition of practice of law should be adopted for purposes of interpreting 29 C.F.R. § 541.304(a)(1); and (4)  any reasonable federal practice of law definition would support a finding that  Lola did not engage in the practice of law for purposes of a motion to dismiss.

4

Even if "practice of law" as used in 29 C.F.R. § 541.304(a)(1) is defined by state law, the District Court erred in holding that North Carolina law provides the relevant definition in this case. Under federal choice of law principles, the Court must determine which state has the greatest interest in the specific issue in this case, *i.e.*, which state has the greatest interest in regulating Lola's potential practice of law. While North Carolina may have the greatest interest in the overall litigation, by virtue of its interest in regulating working conditions within its borders, it does not have the greatest interest in the specific issue of whether Lola was practicing law. The state with the greatest interest in determining whether Lola was practicing law is the one whose citizens were most greatly affected by his work. The District Court conducted no analysis as to what state that is. Specifically, the District Court did not analyze (1) where the litigation for which Lola performed work was pending; (2) where the parties to that litigation were located; (3) what law applied in that litigation; and (4) where the underlying events to that litigation took place. In fact, the record and District Court decision are completely silent as to which state has the greatest interest in determining whether Lola was engaged in the practice of law. Accordingly, in order to properly conduct a choice of law analysis, discovery is needed to identify the states with an interest in regulating Lola's potential practice of law, as relevant information about the clients and the litigation for which Lola performed work is in Skadden and/or

5

Tower's possession, not Lola's. Accordingly, the District Court's dismissal of the FAC was, at best, premature.

However, as a state by state analysis of "practice of law" will often be unworkable in complex litigations, and the purposes of states' "practice of law" definitions are wholly separate from the FLSA's purpose, a federal definition of "practice of law" in 29 C.F.R. § 541.304(a)(1) is warranted. Any federal definition would include the core principle that the practice of law involves the "application of legal principles and judgment to the circumstances or objectives of another person or entity." ABA Task Force on Model Definition of Practice of Law Recommendation (Aug. 11, 2003). Under this definition, the FAC does not establish that Lola was engaged in the practice of law. On the contrary, the FAC alleges that Lola did not and could not exercise independent judgment or engage in legal analysis. (A-20, ¶ 29.) Accordingly, the FAC does not establish that Lola was an exempt professional.

Finally, for the same reasons that Lola was not engaged in the practice of law under a federal standard, even under North Carolina's "practice of law" definition, the FAC does not establish that Lola engaged in the practice of law. Therefore, the District Court's order and judgment should be reversed.

## V.    ARGUMENT

### A. Applicable Standard Of Review

A decision granting a motion to dismiss is subject to *de novo* review. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). All of the issues raised in this appeal are therefore subject to *de novo* review.

### B. Motion To Dismiss Standard

In deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (alteration in original, original quotation marks omitted). To withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court may dismiss a complaint based on an affirmative defense only if that defense "is clear from the face of the complaint[.]" *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008). A motion to dismiss based on an affirmative defense may be granted only "where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). Notably, a plaintiff's complaint need not anticipate

or refute an affirmative defense. *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999).

## C. The FLSA's Professional Exemption

The FLSA requires employers to pay employees overtime compensation of one and a half times their regular rate for hours worked in excess of 40 per week unless the employees fall into a narrowly defined exemption. 29 U.S.C. § 207. Because the FLSA is a remedial statute, overtime "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also*, *e.g.*, *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010).

The FLSA's overtime provisions do not apply to "any employee employed in a bona fide . . . professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary[.]" 29 U.S.C. § 213(a)(1). Under Department of Labor regulations, the professional exemption Skadden and Tower seek to apply here exempts only an "employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof[.]" 29 C.F.R. § 541.304(a)(1). The FLSA's exemptions are affirmative defenses. *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010). Thus, it is Skadden and

8

Tower's burden to prove that (1) Lola is the holder of a valid or certificate

permitting the practice of law (a fact which is not in dispute) and (2) Lola actually

engaged in the practice of law.

### D. If "Practice Of Law" Is Defined By State Law, Discovery Is Needed To Identify The State Whose Definition Applies, And The Record Does Not Establish That North Carolina Is That State

The District Court held that (1) state law defines "practice of law" as used in

29 C.F.R. § 541.304(a)(1) and (2) under a federal choice of law analysis, North

Carolina law supplies the appropriate definition in this case.  For the reasons

discussed *infra*, Lola maintains that a federal definition of "practice of law" is

necessary.  Nevertheless, even if "practice of law" for FLSA purposes must be

defined by state law, the District Court erred in applying North Carolina law.

Federal choice of law principles apply in this case, for the reasons set forth

by the District Court.  "The federal common law choice-of-law rule is to apply the

law of the jurisdiction having the greatest interest in the litigation." [1]  *In re Koreag,*

*Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992).  "[W]hen conducting

a federal choice-of-law analysis, absent guidance from Congress, [a court] may

consult the Restatement (Second) of Conflict of Laws."  *Eli Lilly do Brasil, Ltda v.*

*Fed. Express. Corp.*, 502 F.3d 78, 81 (2d Cir. 2007).  The Restatement takes an

---

[1] New York's choice of law standard is similar to the federal standard.  *In re Koreag, Controle et Revision S.A.*, 961 F.2d at 350-351.  Thus, whether the Court applies the federal choice of law analysis or that of the forum state – New York – the outcome would be the same.

issue-by-issue approach to conflict of laws analysis. That is, for each issue, it instructs that one must determine which jurisdiction has the greatest interest in applying its law, even if that means different jurisdictions' laws will apply to different jurisdictions in the same case. Restatement (Second) of Conflict of Laws § 145(1) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the occurrence and the parties[.]") (emphasis added); *Id*. at § 145 cmt. d ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state. . . . The rule of this Section makes explicit that selective approach to choice of the law governing particular issues."); *Id*. at § 6 cmt. F ("In general, it is fitting that the state whose interests are most deeply affected should have its local law applied. Which is the state of dominant interest may depend upon the issue involved.").

In accordance with the Restatement approach, courts applying a choice of law analysis look at each issue separately to determine which state has the greatest interest in applying its law to a particular issue. *E.g.*, *Corporation Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 794 (2d Cir. 1980) ("Using the choice of law technique of depecage, a court may and in this case we think should have separated this part of the case into two different portions for choice of law purposes."); *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 348

10

(3d Cir. 2000) (affirming district court's application of Pennsylvania law "in the determination of compensatory damages and the law of Puerto Rico in the determination of punitive damages" based on the respective jurisdiction's interests); *Judge v. Amer. Motors Corp.*, 908 F.2d 1565, 1571 n.6 (11th Cir. 1990) (ratifying issue-by-issue choice of law analysis); *Webb v. Rodgers Machinery Mfg. Co.*, 750 F.2d 368, 374 (5th Cir. 1985) ("[T]he Restatement makes clear that choice of law considerations should be viewed 'with respect to the particular issue' to be decided."). "The goal of [the choice of law] analysis is to evaluate the various contacts each jurisdiction has with the controversy, and determine which jurisdiction's laws and policies are implicated to the greatest extent." *In re Koreag, Controle et Revision S.A.*, 961 F.2d at 350.

Thus, under a choice of law analysis the relevant question here is which state has the greatest interest in applying its practice of law definition to Lola's work, even if a different state, such as North Carolina, has a greater interest in other aspects of the litigation or the general outcome of the litigation. The state with the greatest interest in applying its practice of law definition to Lola's work is the one whose citizens were most affected by his work. As set forth below, relevant facts include the location of the litigation for which Lola performed work, the location of the actions giving rise to that litigation, the location of the parties to that litigation, and, possibly, the state of Lola's licensure. Nothing in the FAC

11

establishes that North Carolina has any interest, let alone the greatest interest, in applying its practice of law definition here.  North Carolina's definition and regulation of practice of law, on their faces, do not reach the activities of a person who is (1) licensed in another jurisdiction; (2) working on litigation pending in another jurisdiction; that (3) involves parties domiciled in other jurisdictions; and (4) is based on another jurisdiction's law.  This is true even if the person in question happens to be performing work from a physical location within North Carolina's borders.  Accordingly, the District Court's decision should be reversed.

### i.  If a state definition of "practice of law" applies, discovery is needed to identify the state whose definition applies in this case

As this Court has stated, to determine which state's law to apply, a court must "evaluate the various contacts each jurisdiction has with the controversy, and determine which jurisdiction's laws and policies are implicated to the greatest extent."  *In re Koreag, Controle et Revision S.A.*, 961 F.2d at 350.  Given the multitude of possibilities of which state's law applies here, it would be impossible for the District Court to conduct a proper choice of law analysis at the motion to dismiss stage.  *See N. Amer. Tech. Servs., Inc. v. V.J. Techs., Inc.*, No. 10 CV 1384, 2011 U.S. Dist. LEXIS 111816, at *7 (D. Conn. Sept. 29, 2011).

In this case, the relevant question is which state has the greatest interest in applying its practice of law definition to Lola's activities.  The FAC does not

12

contain enough information to make this evaluation (nor could it, as many of the relevant facts are known to Skadden and/or Tower, and not to Lola). Thus, if the Court determines that state law governs the FLSA's definition of "practice of law," a record needs to be developed in order to (1) identify all the states that may have an interest in having their "practice of law" definitions apply to Lola's work and (2) which of those states has the greatest interest in applying its "practice of law" definition to the case at hand. The key question is which state has the greatest interest in regulating Lola's activities, assuming *arguendo* that they could constitute the practice of law.

The District Court identified four states with an interest in this litigation: "North Carolina (where Lola worked), Ohio (where the MDL Litigation was pending), California (where Lola was licensed), and New York (where Defendants had their principal places of business)[.]" (A-53.) As discussed in greater detail *infra* Section V.D.ii., the present record does not establish any North Carolina interest in applying its practice of law definition. The FAC does not allege any North Carolina connection to the litigation for which Lola performed work. Specifically, the FAC does not allege that the litigation at issue (1) was pending in North Carolina; (2) involved North Carolina parties; or (3) involved North Carolina law. For similar reasons, on the present record New York does not appear to have a substantial interest in applying its practice of law definition,

13

simply by virtue of being the forum state of the instant action.  The analysis of New York and North Carolina's interests could change if it turned out that Skadden's client was located in New York or North Carolina and/or the underlying litigation involved matters of New York or North Carolina law.  In other words, based on the FAC, North Carolina and New York each have a one in 50 chance of being the state with the greatest interest in applying its practice of law definition here.

The Northern District of Ohio does have an interest in applying its practice of law definition, as the litigation for which Lola performed work was pending before it, and it has an interest in regulating litigation conduct before it.  However, this interest is diminished by the fact that Lola never appeared in the action or gave the impression of appearing by, for example, attending conferences, defending depositions, or otherwise interacting in any direct way with the parties or the court.  Furthermore, other than being the forum state of the underlying litigation, on the present record, just as is the case with North Carolina and New York, it cannot be determined that Ohio had any connection to the facts, law, or parties involved in the underlying litigation.

California also has a strong interest in applying its practice of law definition, as it is the state of Lola's licensure, and "[a] state has a paramount interest in regulating the conduct of attorneys licensed to practice within its borders." *Denney*

14

*v. Jenkins & Gilchrist*, 230 F.R.D. 317, 336 (S.D.N.Y. 2005).  However, these are

not all of the relevant interests at stake in defining the practice of law with respect

to Lola's work.  In fact, they are likely not the most significant interests, because

they do not address the location of client at issue or the law involved in the

litigation for which Lola performed work.

While there appears to be no case law describing which state's interests are

most relevant to defining "practice of law" for FLSA purposes, authorities

describing states' interests in regulating the practice of law – whether through

attorney discipline, actions based on unauthorized practice of law statutes, or legal

malpractice cases – are instructive.

It is clear as a matter of both law and common sense that where one is

physically is not determinative of which state governs whether he is practicing law.

States' unauthorized practice of law statutes are aimed at protecting their own

citizens from unqualified legal work.  *E.g.*, *Clarendon Am. Ins. Co. v. Hickok*, 370

Ark. 41, 46 (2007) ("The prohibition against the unauthorized practice of

law exists not only to insure professional competence, but also to protect the public

from relying upon the legal counsel of persons who are not bound by the

professional standards of conduct that are imposed upon those practicing law in

this state."); *Columbus Bar Ass'n v. Thomas*, 109 Ohio St. 3d 89, 91 (2006)

("Rules prohibiting the unauthorized practice of law are intended

15

to protect Ohio citizens from the dangers of faulty legal representation rendered by persons not trained in, examined on, or licensed to practice by the laws of our state.") (internal quotation marks omitted); *Chandris v. Yanakakis*, 668 So. 2d 180, 184 (Fla. 1995) ("In determining whether a particular act constitutes the practice of law, our primary goal is the protection of the public); *Ranta v. McCarney*, 391 N.W.2d 161, 163 (N.D. 1986) (unauthorized practice of law "statute is clearly intended to provide protection to our citizens from unlicensed and unauthorized practice of law"); *Spivak v. Sachs*, 16 N.Y.2d 163, 168 (1965) (stating that the purpose of New York's unauthorized practice of law statute is "to protect [New York's] citizens against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work"); *cf. Birbrower v. Super. Ct. of Santa Clara County*, 17 Cal. 4th 119, 128 (1998) (California's prohibition of unauthorized practice of law "in California" requires "sufficient contact with the *California client* to render the nature of the legal service a clear legal representation").

A person practices law "in" a particular state, regardless of his physical location, by representing citizens of that state, generally with respect to that state's law, and/or handling cases in that state's courts. *E.g.*, *Birbrower*, 17 Cal. 4th at 128-129 ("[T]he practice of law 'in California' entails sufficient contact with the California client to render the nature of the legal service a clear legal

representation. . . . [O]ne may practice law in [California] in violation of section 6125 although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means."); *Simons v. Steverson*, 88 Cal. App. 4th 693, 713 (Ct. App. 2001) ("Steverson's physical presence in California, or his absence, is not determinative [of whether he practiced law in California]. . . . [T]he crucial inquiry simply is whether Steverson, as a California licensed lawyer, performed legal services for California residents."); *Scariano v. Justices of the Sup. Ct. of the State of Ind.*, 852 F. Supp. 708 (S.D. Ind. 1994) (practicing law "in Indiana" for purposes of conditional bar admission "means dealing with Indiana law, representing Indiana clients, or handling cases in Indiana courts, *i.e.*, the applicant must look to the substance of what he or she is doing in the practice that relates to Indiana law courts and clients rather than the physical location of his office").

Thus, the state for whose citizen(s) Lola's work was used has the strongest interest in regulating whether or not Lola engaged in the practice of law. Choice of law rules concerning which jurisdiction's rules govern an attorney disciplinary proceeding concerning work unrelated to a matter before a tribunal also frequently prioritize the location where the attorney's work has "predominant effect" over where the attorney physically worked. *E.g.*, ABA Model Rules of Prof'l Conduct

17

R. 8.5(b); *see also*, *e.g.*, N.C. Rules of Prof'l Conduct R. § 8.5(b); Ill. Rules of Prof'l Conduct R. § 8.5(b); Pa. Rules of Prof'l Conduct R. § 8.5(b); Ohio Rules of Prof'l Conduct R. § 8.5(b); Mass. Rules of Prof'l Conduct R. § 8.5(b); Or. Rules of Prof'l Conduct R. § 8.5(b).  Such choice of law provisions implicitly recognize that it is the jurisdiction at which a lawyer's work is directed, rather than the jurisdiction where he is located, that has the greatest interest in regulating his behavior, as it is that jurisdiction's citizens who will be most affected by the lawyer's work.  Similarly, in the legal malpractice context, the place of injury and the injured party's domicile are significant factors in a choice of law analysis, as the states where an injury occurred and where an injured party resides have strong interests in preventing and remedying legal malpractice.  *E.g.*, *Washburn v. Soper*, 319 F.3d 338, 343 (8th Cir. 2003) (in malpractice action against Iowa law firm brought in Iowa district court, finding that Illinois statute of limitations applies "where the plaintiffs are Illinois residents, the defendant attorney is licensed in both Iowa and Illinois, the defendant attorney was retained to represent the plaintiffs in Illinois state court proceedings, and these proceedings concerned Illinois residents, Illinois businesses, Illinois trust agreements, and Illinois contracts"); *Bobbitt v. Milberg, LLP*, 285 F.R.D. 424, 428-433 (D. Ariz. 2012) (conducting comprehensive choice of law analysis in legal malpractice case and placing primary importance on the place of injury and injured parties' domicile);

18

*cf. St. Paul Fire & Marine Ins. Co. v. Birch, Steart, Kolasch & Birch, LLP*, 233 F.

Supp. 2d 171, 180 (D. Mass. 2002) ("Massachusetts has a strong interest in

protecting Massachusetts residents from malpractice by out-of-state attorneys

practicing in the Commonwealth. In these circumstances, were it just a question of

which state's malpractice law would apply, the answer would be that

Massachusetts law would be applicable.").

Here, information about where Skadden's client was located, the location to

which Skadden's legal services (and potentially Lola's work) were delivered, and

the jurisdiction's law involved in the underlying litigation are all not part of the

record and are in fact not known to Lola. As such there is no reference to any of

these things in the FAC. However, these facts are certainly highly significant to

identifying the state with the greatest interest in applying its practice of law

definition to Lola's work. Accordingly, if a state "practice of law" definition

applies to the FLSA, discovery is needed to determine which state has the greatest

interest in applying its definition to Lola's work. As the applicable law cannot be

determined based on the FAC, it is premature to dismiss the FAC, even if the Court

determines that it is appropriate to use state law to define "practice of law." *E.g.*,

*Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) ("Such

a choice-of-law determination is premature on this motion to dismiss, since the

19

record lacks facts necessary to conduct the context-specific . . . analysis required by New York's choice-of-law principles.").

### ii. The District Court erred in applying North Carolina law to define "practice of law"

"[A] court should never apply the law of a state if the policy considerations which underlie that state's rule will not in any way be advanced by the rule's application." *Judge*, 908 F.2d at 1570 n.5. The purpose behind North Carolina's definition and regulation of the practice of law is to protect its citizens. As the FAC does not establish that, and the District Court did not discuss whether, the litigation for which Lola performed work (1) was pending in North Carolina (in fact, the FAC states that the litigation was pending in federal court in Ohio); (2) had anything to do with conduct occurring in North Carolina; (3) had anything to do with North Carolina law; or (4) involved North Carolina parties, Lola's work could not constitute the practice of law "in North Carolina." Furthermore, regulating Lola's work as being or not being the practice of law would not serve to protect North Carolina citizens from the dangers of unlicensed practice of law. Accordingly, North Carolina has no interest in applying its practice of law definition to Lola's work, and the District Court erred in doing so.

Although Lola physically worked in North Carolina, there is nothing in that record to establish that he was potentially practicing law "in North Carolina." North Carolina's purpose in regulating the unauthorized practice of law (the

20

context from which the District Court drew its practice of law definition), "is for the better security of the people against incompetency and dishonesty in an area of activity affecting general welfare." *State v. Pledger*, 257 N.C. 634, 637 (1962); *see also* N.C. Gen. Stat. §§ 84-2.1, 84-4. "The people" the North Carolina legislature sought to protect through its unauthorized practice of law provisions are clearly the people of North Carolina. Thus, for North Carolina's interest in regulating the practice of law to be implicated in this action, Lola's work would have to have some impact on or connection to North Carolina citizens. To be sure, as discussed *infra*, other jurisdictions have similarly recognized that physical presence is not determinative of whether one is practicing law "in" a particular state. Rather, one must look at a lawyer's contacts with and impact on a particular state to determine if the lawyer is practicing law "in" that state. *E.g.*, *Birbrower*, 17 Cal. 4th at 128-129; *Simons*, 88 Cal. App. 4th at 713; *Scariano*, 852 F. Supp. 708.

In this case, the FAC contains no allegations supporting a finding that Lola's work was in any way directed at North Carolina. The FAC has no allegations supporting a finding that the Skadden client(s) for whom his work was to be used were North Carolina citizens. Nor does the FAC establish that the litigation for which the document review was performed implicated North Carolina law in any way. On the contrary, the FAC states that Lola performed document review for a multidistrict litigation with a venue in the United States District Court for the

Northern District of Ohio. As there is nothing in the FAC supporting a finding that Lola's work had anything to do with North Carolina – other than the fact that he was physically present in North Carolina when he performed it – his activities were not the ones meant to be regulated by North Carolina's practice of law definition and unauthorized practice of law statute.

A similar purpose animates North Carolina's relevant Rules of Professional Conduct. North Carolina Rule of Professional Conduct 8.5(a) subjects to North Carolina's disciplinary authority attorneys admitted to practice in North Carolina and attorneys not admitted to practice in North Carolina but who render or offer to render legal services in North Carolina. With respect to the meaning of render or offer to render services in North Carolina, the comments to Rule 8.5 state, "Extension of the disciplinary authority of North Carolina to other lawyers who render or offer to render legal services in North Carolina is for the protection of the citizens of North Carolina." In other words, the purpose behind regulating unlicensed attorneys has nothing to do with where an attorney is physically located. Rather, it has to do with whether he or she is providing or offering to provide legal services to North Carolina citizens.

Notably, under these circumstances, even the Restatement provision relied upon by the District Court would counsel against applying North Carolina's

practice of law definition. That provision, concerning the validity of contracts for rendition of services, provides:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, *with respect to the particular issue*, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 196 (emphasis added). The relevant comment elaborates: "There will . . . be occasions when the local law of some state other than that where the services are to be performed should be applied in any event, because of the intensity of the interest of that state in having its local law applied to determine the particular issue[.]" *Id*. at § 196 cmt. d. Thus, just as physical location is not of paramount importance in determining where someone may be practicing law, the Restatement recognizes that a state other than the one where services are to be performed pursuant to a contract may have the strongest interest in applying its law to a particular issue.

### E. The Court Should Apply A Federal Definition To "Practice Of Law" For FLSA Purposes

The Court can and should apply a federal definition of "practice of law" to 29 C.F.R. § 541.304(a)(1) as a matter of regulatory interpretation. "This is not federal common law in the strictest sense, *i.e.*, a rule of decision that amounts, not

simply to an interpretation of a federal statute . . . , but, rather, to the judicial creation of a special federal rule of decision." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998) (internal quotation marks omitted; omission in original). However, even if defining "practice of law" were a matter of federal common law, it would be appropriate to apply a federal rather than state definition. Application of a federal standard as a matter of federal common law is appropriate when "the scheme in question evidences a distinct need for nationwide legal standards, or when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand[ or] . . . when application of . . . state law . . . would frustrate specific objectives of the federal program." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991). Here, there is a distinct need for a federal standard because (1) a state by state analysis is unworkable, if not impossible, in complex litigations, and (2) the purpose behind states' definitions of "practice of law" is entirely different than and, when misapplied, could frustrate, the purpose of the FLSA and the FLSA's overtime exemptions.

In any case such as this one arising out of work performed on a complex, multijurisdictional litigation, complex choice of law issues will always arise. This will make it difficult for employers to determine *ex ante* whether attorney employees are entitled to overtime and raises the possibility that different judges

24

will make conflicting choice of law determinations.  As stated by the Supreme

Judicial Court of Massachusetts,

> It is not uncommon for lawyers who are licensed in one State and practicing at a law firm or corporation in that State to be asked to provide legal services for the same law firm or corporation at its offices in another State, or even another country, where the lawyer is not licensed.  Yet, there is little guidance from regulating authorities regarding the proper constraints of such practice.  Plainly there is a burgeoning need for clarification of the boundaries of multijurisdictional practice vis-à-vis the unauthorized practice of law.

*Schomer v. Bd. of Bar Examiners*, 465 Mass. 55, 61 n.12 (2013).  To avoid these

problems and ensure predictability and FLSA compliance, a federal "practice of

law" definition should apply to 29 C.F.R. § 541.304(a)(1).

Furthermore, a federal definition is needed to avoid frustrating the FLSA's

purpose.  "Practice of law" for FLSA purposes should be defined, where possible,

consistent with the FLSA's purpose.

> The legislative history [of the FLSA] indicates that the section 13(a)(1) exemptions were premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay.  Further, the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the FLSA's time-and-a-half overtime premium."

69 Fed. Reg. 22123-22124 (Apr. 23, 2004).  The purpose of state's regulating and

defining the practice of law – to protect the public from untrained and unlicensed

25

legal work – is completely different from the purpose behind the FLSA and the professional exemption. Thus, although 29 C.F.R. § 541.304(a)(1) requires that an exempt attorney hold a valid state license to practice law, the second prong of the exemption calls for the application of a federal, not state, standard. This conclusion is reinforced by the District Court's own analysis. The District Court acknowledged that Lola was licensed in California, but it nonetheless applied the practice of law definition of a different state. (A-48, A-53, A-55 – 57.) Thus, even under the District Court's analysis, it is unnecessary to rely on the same jurisdiction's law with respect to the two prongs of the relevant exemption. It stands to reason that "practice of law" under the FLSA would be defined somewhat differently than under state law, in order to further the purposes of the FLSA by requiring overtime compensation for employees performing routine, standardized work (*i.e.*, in this case, work that does not involve the use of legal judgment and discretion) that is easily spread among workers after 40 hours in a week, and who may not receive above average fringe benefits and opportunities for advancement.

### i. Defining "practice of law" for FLSA purposes

Any appropriate "practice of law" standard for FLSA purposes should be consistent with the principle set forth by the ABA that the practice of law "is the application of legal principles and judgment to the circumstances or objectives of another person or entity." ABA Task Force on Model Definition of Practice of

Law Recommendation (Aug. 11, 2003), *available at*

http://www.americanbar.org/content/dam/aba/migrated/cpr/model-

def/recomm.authcheckdam.pdf.  This concept is recited in the practice of law

definitions of many jurisdictions.  *E.g.*, Ky. SCR 3.020 ("The practice of law is any

service rendered involving legal knowledge or legal advice, whether of

representation, counsel or advocacy in or out of court, rendered in respect to the

rights, duties, obligations, liabilities, or business relations of one requiring the

services."); *State ex rel. Okla. Bar Ass'n v. Running*, 262 P.3d 736, 739 (Okla.

2011) ("This Court has found that the practice of law is the rendition of services

requiring the knowledge and application of legal principles and technique to serve

the interests of another with his consent."); *Iowa Sup. Ct. Comm'n on*

*Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679, 682 (Iowa 2001)

("Functionally, the practice of law relates to the rendition of services for others that

call for the professional judgment of a lawyer. The essence of professional

judgment of the lawyer is the educated ability to relate the general body and

philosophy of law to a specific legal problem of a client[.]"); *In re Jackman*, 761

A.2d 1103, 1106 (N.J. 2000) ("One is engaged in the practice of law whenever

legal knowledge, training, skill, and ability are required."); *Cont'l Cas. Co. v.*

*Cuda*, 715 N.E.2d 663, 668 (Ill. App. Ct. 1999) ("The giving of advice or rendition

of any sort of service by any person, firm or corporation when the giving of such

27

advice or rendition of such service requires the use of any degree of legal knowledge or skill.") (internal quotation marks omitted); *Attorney Grievance Comm'n of Md. v. Shaw*, 732 A.2d 876, 882 (Md. 1999) ("[T]he practice of law includes utilizing legal education, training, and experience [to apply] the special analysis of the profession to a client's problem.") (internal quotation marks omitted, insertion in original); *In re Rowe*, 604 N.E.2d 728, 731 (N.Y. 1992) ("The practice of law involves the rendering of legal advice and opinions directed to particular clients.").

In the same vein, in *Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, 13 CV 1432 (S.D.N.Y. Dec. 11, 2013)[2], Judge Abrams synthesized authority from several jurisdictions and set forth certain factors helpful to determining whether an individual has engaged in the practice of law under the FLSA: "[1] whether the individual at issue renders legal advice to a particular client, [2] whether he holds himself out as an attorney, and [3] whether his duties require him to draw on legal knowledge and judgment[.]" *Henig*, No. 13 CV 1432, at 7:14-19 (internal citations omitted).

Under the standard recommended by the ABA and adopted by many jurisdictions, someone whose duties necessarily *do not* involve the application of legal knowledge, training, and judgment is not practicing law. Therefore, she is

_____

[2] The transcript of this hearing is submitted with this memorandum of law as the Addendum.

not an exempt employee pursuant to 29 C.F.R. § 541.304(a)(1). This is very different from an attorney who does apply her legal knowledge, training, and judgment in her work but also performs some rote activities. Such an attorney would not become non-exempt simply because she performs some routine work. To be sure, in many contexts the FLSA exempts employees who perform some exempt work and a lot of non-exempt work, as opposed to employees who *only* perform non-exempt work. *See*, *e.g.*, *Pippins v. KPMG LLP*, 759 F.3d 235, 242 (2d Cir. 2014) ("Even if an employee's responsibilities require her to engage in some routine work, the position may be classified as coming within the professional exemption.") (internal quotation marks omitted); *Scott v. SSP Amer., Inc.*, No. 09 CV 4399, 2011 U.S. Dist. LEXIS 32819, at *14, 24 (E.D.N.Y. Mar. 29, 2011) (finding that employee who claimed she spent 90% of her time performing non-exempt duties was exempt because her exempt duties "were more important to the success of Defendant's business than her other duties"); *Guinup v. Petr-All Petroleum Corp.*, No. 07 CV 1120, 2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) (same finding where employee spent 80% of her time performing non-exempt duties).[3]

---

[3] While these cases arise in the context of determining an employee's primary duty rather than determining whether someone is engaged in the practice of law, the situations are analogous. Thus, an attorney who is engaged in the practice of law does not cease being exempt merely because he or she is assigned a task, even a lengthy one, that is not the practice of law.

Thus, the totality of a first year associate's job duties differentiates him or her from a contract attorney like Lola who was hired solely to perform non-exempt document review. First year associates are hired to practice law by performing a wide range of legal work of increasing complexity and/or responsibility as they gain experience. This work may at times include the type of work Plaintiff performed but also includes work entailing the application of legal training and judgment, such as participating in creating the protocols to be used in a document review project, legal research and writing, and deposition and trial preparation. A law firm also provides training to associates in order to develop a wide range of legal skills. *Cf. Pippins*, 759 F.3d at 247 n.4 (finding "Audit Associates" to be exempt professionals and noting that the position "is a rung on a ladder to the higher reaches of the profession, not a separate job classification into which less highly-trained or highly-skilled applicants are hired and in which they are expected to remain"). On the other hand, Plaintiff was hired for one purpose – to review hundreds of documents per day according to Skadden's detailed protocols. This type of document review does not, in and of itself, constitute the practice of law because it does not require the application of legal knowledge, training, and judgment.

### ii. Applying a federal "practice of law" definition, Lola was not engaged in the practice of law

The FAC does not establish that Lola's work entailed the "application of legal principles and judgment to the circumstances or objectives of another person or entity." On the contrary, the FAC alleges that Lola's sole responsibility was to follow detailed protocols regarding how to code documents based on the presence or absence of certain terms and as such, he did not and could not engage in legal analysis or exercise independent judgment. (A-20, ¶¶ 24, 26, 28, 29.) Specifically, the FAC alleges:

> Defendants provided Plaintiff with extremely detailed protocols to follow if and when certain terms appeared or did not appear in each document, and Plaintiff was not required or allowed to exercise any independent judgment in carrying out these protocols. Plaintiff was told exactly what terms to look for in these documents, and the nature of his work required no legal analysis whatsoever.

(*Id*. at ¶ 29.) Therefore, under the proposed federal "practice of law" definition, which is consistent with both the ABA's Recommendation and many jurisdictions' definitions, the FAC does not establish that Lola was an exempt professional, and the District Court's dismissal of the action should be reversed.

Skadden and Tower will likely argue, as they did in their motion to dismiss, that *any* document review performed by an attorney (even if that same work could have been adequately performed by a non-attorney) inherently involves legal analysis and judgment. This argument must fail. On a motion to dismiss, the

plaintiff's allegations must be accepted as true. If Lola's allegations are accepted

as true, they establish that Lola *did not* use legal training and judgment in his work.

As such, he was not exempt. If Skadden and Tower dispute the truth of Lola's

allegations, they must develop a record to substantiate their position before they

can seek to dismiss the FAC on summary judgment. To be sure, as Judge Abrams

found under similar circumstances, where a complaint alleges that document

review did not entail the use of legal judgment or knowledge, a bald assertion by

defendants to the contrary merely creates an issue of fact; "[s]uch disputed matters

cannot be definitively determined as a matter of law on [a] motion to dismiss."

*Henig*, No. 13 CV 1432, at 10:1-2. In short, Judge Abrams recognized that (1)

there are types of document review that may not constitute the practice of law; (2)

whether the type of work alleged involves the application of legal knowledge and

training is a relevant consideration in determining whether the work constituted the

practice of law; and (3) a record is necessary to resolve factual disputes relevant to

application of an FLSA exemption. *Henig*, No. 13 CV 1432, 7:21-10:2.

 This case is unlike *Pippins v. KPMG LLP*, 759 F.3d 235 (2d Cir. 2014). In

*Pippins*, this Court affirmed a grant of summary judgment in the defendant's favor,

finding that "Audit Associates" were exempt professionals under the FLSA, albeit

using a different exemption test than the one at issue here. However, *Pippins*,

unlike the instant action, was a summary judgment decision decided based upon a

record of undisputed facts regarding the employees' job duties. The Court's

conclusion that the Audit Associates exercised professional discretion and

judgment was similarly based on a factual record, which is absent in this action.

Moreover, in finding the *Pippins* plaintiffs exempt, the Court relied on facts that do

not exist in this case. For example, in *Pippins*, unlike here, the employees at issue

had direct interaction with the client, performed substantive work such as drafting

reports, and were typically promoted after two years. *Id*. at 239.

As the FAC does not establish that Lola was an exempt professional, the

District Court's dismissal of this action should be reversed.

### F.  Even Under North Carolina's "Practice Of Law" Definition, Lola Was Not Engaged In The Practice Of Law

For the reasons set forth *supra*, a federal "practice of law" definition applies

to 29 C.F.R. § 541.304 and even if a state definition applies, North Carolina's

definition is inapplicable to this case. However, it is also clear that even if North

Carolina's "practice of law" definition applied here, Lola's activities would not be

the practice of law, and the District Court erred in holding to the contrary.

North Carolina defines "practice of law" as:

> performing any legal service for any other person, firm or corporation,
> with or without compensation, specifically including the preparation
> or aiding in the preparation of deeds, mortgages, wills, trust
> instruments, inventories, accounts or reports of guardians, trustees,
> administrators or executors, or preparing or aiding in the preparation
> of any petitions or orders in any probate or court proceeding;
> abstracting or passing upon titles, the preparation and filing of

33

> petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition.

N.C. Gen. Stat. § 84-2.1.  The District Court recognized that "to say [as N.C. Gen. Stat. § 84-2.1 does] that the practice of law encompasses the performance of legal services is not, on its face, very helpful."  (A-58.)  That is, N.C. Gen. State. § 84-2.1 merely creates a new term requiring definition – "legal services" – rather than a self-explanatory definition of "practice of law."  Accordingly, the District Court relied on a North Carolina State Bar Ethics Committee opinion that states:

> A lawyer may use foreign assistants for administrative support services such as document assembly, accounting, and clerical support. A lawyer may also use foreign assistants for limited legal support services such as reviewing documents; conducting due diligence; drafting contracts, pleadings, and memoranda of law; and conducting legal research. . . . [W]hen outsourcing legal support services, lawyers need to be mindful of the prohibitions on unauthorized practice of law in Chapter 84 of the General Statutes and on the prohibition on aiding the unauthorized practice of law in Rule 5.5(d).

N.C. State Bar Ethics Comm., 2007 Formal Ethics Op. 12 (Apr. 25, 2008).  The District Court erred in concluding that under this ethics opinion, Lola was necessarily engaged in the practice of law under North Carolina law.

34

Ethics Op. 12 proves, at most, the unremarkable proposition that there are *some* types of document review that can constitute the practice of law. That does not mean that every type of document review is the practice of law. Moreover, other than Ethics Op. 12, there is scant guidance as to North Carolina's "practice of law" definition. To properly interpret the meaning of "practice of law" under North Carolina, therefore, one must look to the purpose of North Carolina's definition and regulation of the practice of law and the more general principles regarding regulation of the practice of law discussed *supra* Sections V.D.i&ii.

The purpose of North Carolina's definition and regulation of the practice of law, *i.e.*, to protect the public "against incompetency and dishonesty in an area of activity affecting general welfare." *Pledger*, 257 N.C. at 637. This interest is promoted by interpreting "legal services" to mean, consistent with the many jurisdictions cited *supra*, activities entailing the application of a lawyer's specialized knowledge, training, and judgment. *Cf. LegalZoom.com, Inc. v. N.C. State Bar*, 2014 NCBC 9 (N.C. Super. Ct. 2014) ("[U]nlicensed individuals may record information that another provides without engaging in UPL as long as they do not also *provide advice or express legal judgments*[.]") (emphasis added). Under this interpretation, rote document review that does not include the use of independent legal discretion or judgment, like that described in the FAC, is not the practice of law under North Carolina law.

35

## VI.    CONCLUSION

For the foregoing reasons, the District Court's order and judgment should be

reversed.


Dated:  New York, New York
         January 12, 2015


                              By:    /s/ D. Maimon Kirschenbaum
                                     D. Maimon Kirschenbaum
                                     Denise A. Schulman
                                     **JOSEPH & KIRSCHENBAUM LLP**
                                     233 Broadway
                                     5th Floor
                                     New York, NY 10279
                                     212-688-5640

                                     *Attorneys for Plaintiff-Appellant*

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 8,845 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:   New York, New York
       January 12, 2015

/s/ Denise A. Schulman
Denise A. Schulman
**JOSEPH & KIRSCHENBAUM LLP**
233 Broadway
5th Floor
New York, NY 10279
212-688-5640

*Attorneys for Plaintiff-Appellant*

# Addendum

1

Dcbghenc
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WILLIAM HENIG,

                    Plaintiff,

            v.                          13 CV 1432(RA)

QUINN EMANUEL URQUHART &
SULLIVAN, LLP,  ET AL.

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        December 11, 2013
                                        11:30 a.m.

Before:

                      HON. RONNIE ABRAMS,

                                        District Judge

                          APPEARANCES

JOSEPH & KIRSCHENBAUM, LLP
     Attorneys for Plaintiff William Henig
D. MAIMON KIRSCHENBAUM
DENISE SCHULMAN

QUINN EMANUEL URQUHART & SULLIVAN
     Attorneys for Defendant Quinn Emanuel
MARC GREENWALD
ELINOR SUTTON

BRYAN CAVE
     Attorney for Defendant DTI
ZACHARY HUMMEL

                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

2

Dcbghenc

```
 1                  (Case called)
 2              MR. KIRSCHENBAUM:  Maimon Kirschenbaum for the
 3   plaintiff.  Good morning.
 4              MR. GREENWALD:  Mark Greenwald and Elinor Sutton on
 5   behalf of defendant Quinn Emanuel.  Good morning.
 6              MR. HUMMEL:  Zachary Hummel, Bryan Cave, on behalf of
 7   the defendant.
 8              THE COURT:  Before me is defendants' motion to
 9   dismiss.  I have considered the parties' submissions, as well
10   as the arguments made at oral argument and I'm ready to rule.
11              Plaintiff is a licensed member of the New York bar who
12   reviewed documents relating to a pending litigation for the law
13   firm of Quinn Emanuel for approximately six weeks.  He brings
14   this FLSA collective action and class action suit alleging he
15   is due overtime under state and federal law.  Defendants move
16   to dismiss on the basis that plaintiff is exempt from overtime
17   requirements pursuant to 29 C.F.R. 541.304(a)(1) because he was
18   an employee employed in a "bona fide professional capacity,"
19   namely, the practice of law.
20              Plaintiff, by contrast, argues that given the "routine
21   nature" of his job duties, which he claims solely involved
22   "sorting documents into categories" based on specific search
23   terms, he did not utilize any legal knowledge and/or judgment
24   and did not engage in the practice of law.
25              Although defendants have offered forceful arguments
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcbghenc

1  regarding why Quinn Emanuel hired contract attorneys as opposed
2  to nonlawyers for the document review at issue, how plaintiff
3  utilized his legal training and education in performing his
4  work, and why he was indeed engaged in the practice of law,
5  those arguments are more appropriately made on summary judgment
6  when the Court can rely on the record in making its
7  determination, instead of on "common sense" and "judicial
8  experience," which defendants urge are sufficient.
9          Accordingly, I'm going to deny the motion to dismiss.
10 Because determination of this issue may result in dismissal of
11 the entirety of the case, however, discovery at this point will
12 be limited to the sole issue of whether Henig was practicing
13 law and thus whether the exemption set forth at 29 C.F.R.
14 541.304 applies.  After that limited discovery has been
15 completed, I will entertain a summary judgment motion from
16 defendants on their affirmative defense.
17         At that point, the Court will have a more complete
18 record before it on which to resolve the issue.  As it stands
19 right now, it is simply not "clear from the face of the
20 complaint," as it must be, even when considered alongside the
21 additional authorities defendants offer in support of their
22 position, that defendants are entitled to dismiss as a matter
23 of law.
24         Before I explain my reasoning on the motion, I'd like
25 to address two threshold matters.  First, plaintiff has
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

4

Dcbghenc

1  submitted a proposed amended complaint, adding four paragraphs
2  to clarify his alleged duties while employed by defendants.
3  Because I find that amending the complaint would not cause
4  undue delay or lead defendants to suffer prejudice, see, e.g.,
5  Holmes v.Grubman 568 F.3d 334, I construe the request as a
6  motion for leave to amend, grant that motion, and treat the
7  proposed amended complaint as the operative complaint in this
8  action.
9         Second, defendants have submitted a Request for
10  Judicial Notice and a Supplemental Request for Judicial Notice.
11  These requests ask the Court to take judicial notice of seven
12  documents - opinions from the American Bar Association and the
13  District of Columbia Bar Association, a disciplinary complaint
14  filed against a member of the Illinois Bar, a letter from the
15  New York Department of Labor explaining the state's exemption
16  for "bona fide professionals," a printout establishing the
17  plaintiff in this case as a member in good standing of the New
18  York State Bar, an opinion from the District of Columbia Court
19  of Appeals Committee on Authorized Practice of Law, and a
20  pleading in Los Angeles Superior Court, alleging that a law
21  firm negligently failed to supervise contract attorneys.
22  Plaintiff has not opposed the requests for judicial notice, and
23  the Court grants these requests.
24         Filings before courts and agencies are appropriately
25  subject to judicial notice, as long as the court considers only

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

Dcbghenc

1   the existence of those filings and not their truth.  See, e.g.,
2   Kramer v. Time Warner, 937 F.2d at 774.  Courts may also take
3   judicial notice of an attorney's bar membership and status.
4   See, e.g., Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., 2013
5   WL 5977440, at *14.  Finally, the existence and authenticity of
6   the opinion letters by bar associations and government agencies
7   "cannot reasonably be questioned," and therefore judicial
8   notice is appropriate under Federal Rule of Evidence 201.  The
9   Court may consider these judicially-noted facts when deciding
10  motions to dismiss. See Mary Jo C. v. New York State and Local
11  Retirement System, 707 F.3d at 149.
12          Now to the merits:  The question of what constitutes
13  the practice of law under 29 C.F.R. 541.304 appears to be one
14  of first impression both in this circuit and elsewhere in
15  federal courts.  Courts and other authorities have, however,
16  more generally addressed the issue when deciding whether an
17  individual was engaged in the unauthorized practice of law.
18          The New York Court of Appeals, for example, held that
19  a disbarred attorney did not practice law when he published a
20  journal article describing recent legal developments.  See
21  Matter of Rowe, 80 N.Y.2d 336 at 341-42.  In so doing, the
22  Court explained that "the practice of law involves the
23  rendering of legal advice and opinions directed to particular
24  clients," and that the journal article was not directed at a
25  particular individual or group.  See Id.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

Dcbghenc

1    Applying Rowe's definition of the practice of law, the
2  Court concluded in A & E Television Networks, LLC v. Pivot
3  Point Entertainment, LLC, that a paralegal who "manage[d]
4  discovery" on an attorney's behalf did not practice law.  See
5  2011 WL 6156985, at *1.  The Court explained that there were
6  "no allegations that the paralegal [w]as rendering legal advice
7  ... or otherwise holding himself out as a lawyer and acting in
8  an unsupervised manner."  Id.  A paralegal, however, was found
9  to have begun practicing law when she prepared an attachment
10 order without attorney supervision, because drafting the
11 document required her to use "independent judgment on a subject
12 with which she had insufficient knowledge."  Sussman v. Grado,
13 746 N.Y.S.2d, 548, 552 (N.Y. District Court of Nassau County,
14 2002), a New York court.
15    The District of Columbia Court of Appeals committee on
16 Authorized Practice of Law also addressed this issue in its
17 Opinion 1605, in which it concluded that contract attorneys
18 working in the District of Columbia could not practice law
19 unless they were members of the D.C. Bar.
20    In reaching this conclusion, the Opinion specifically
21 queried whether a contract attorney must be a member of the bar
22 if he or she performs document review that calls "for little or
23 no application legal knowledge, training or judgment, and that
24 is supervised by a member of the D.C. Bar." (Request for
25 Judicial Notice, Ex. 2 at 5.)

7

Dcbghenc

1       The answer, the Committee explained, "generally
2 depends on whether the person is being held out, and billed
3 out, as a lawyer or as a paralegal." (Id.) A contract
4 attorney hired and billed as a lawyer "is generally engaged in
5 the practice of law," opinion noted, "and is certainly being
6 held out as authorized or competent to practice law." (Id.)
7       It may be the case that the "practice of law" for
8 purposes of the FLSA, encompasses a broader range of activities
9 than does the same phrase when used in determining whether an
10 individual has engaged in the unauthorized practice of law.
11 These authorities are nonetheless instructive in determining
12 what constitutes the practice of law.
13       From them, the Court distills several factors that
14 bear on the definition, whether the individual at issue renders
15 legal advice to a particular client, see Rowe, 80 N.Y.2d at
16 342; whether he holds himself out as an attorney, see the
17 Request for Judicial Notice, exhibit two at page five, which is
18 Opinion 1605; and whether his duties require him to draw on
19 legal knowledge and judgment, see, e.g., Sussman, 746 N.Y.S.2d
20 at 552.
21       Although at a later stage of the case, defendants may
22 well be able to establish that Henig's participation in the
23 document review "involve[d] the rendering of legal advice and
24 opinions directed to particular clients," that is not "clear
25 from the face of the complaint." See Staehr, 547 F.3d, 425.

8

Dcbghenc

```
 1          The complaint alleges that plaintiff's "entire
 2  responsibility while working for defendants consisted of
 3  looking at documents to see what search terms, if any, appeared
 4  in the documents and marking those documents into the
 5  categories predetermined by defendants."  [Amended Complaint
 6  paragraph 33], a task he argues involved neither the rendering
 7  of advice nor of opinions.
 8          Indisputably, because Henig was assigned to a
 9  particular project, his work related to a particular client.
10  And document review is a function commonly performed by lawyers
11  in the course of their representation of clients.  Indeed, as
12  defendants point out, courts routinely award attorneys' fees
13  for time attorneys spend reviewing documents, see, e.g., Moreno
14  v. City of Sacramento, 534 F.3d 1106, 1114, (9th Cir. 2008),
15  and the consequences of incorrectly disclosing or withholding
16  documents can be severe.  Although defendants may ultimately
17  succeed in proving that plaintiff acted as a lawyer as part of
18  a team of lawyers that rendered advice and opinions to that
19  client, as many junior lawyers and contract attorneys do, that
20  cannot be determined at this time as a matter of law.
21          As to whether Henig held himself out as an attorney,
22  it is true that the amended complaint alleges that plaintiff is
23  an attorney, that "defendants employed attorneys for document
24  review projects on a temporary short-term basis" and that Henig
25  worked for defendants "in this capacity."  But these
```

9

Dcbghenc

1  allegations leave unanswered a number of determinative
2  questions.  Did Quinn Emanuel specifically request attorneys
3  for the project, and did the firm communicate in some manner to
4  its clients that attorneys, as opposed to paralegals, would be
5  performing this task?  One imagines so but the amended
6  complaint does not say.  Was Henig held out, and billed out, as
7  an attorney?  Presumably, but one cannot be sure.  Did
8  defendants require him to be a member of the New York or other
9  Bar to participate in the project?  Most likely, but nowhere
10  does the amended complaint make "unequivocally" clear the
11  answer to this and the other questions.
12          Defendants argue that they "hire contract attorneys to
13  perform work that licensed attorneys do" because they count on
14  their judgment, their skill, and the fact that they're bound by
15  the ethical rules.  That may well be, and may ultimately help
16  lead the Court to conclude that Henig was indeed practicing
17  law, but the Court cannot resolve these questions by resort to
18  "common sense" or "judicial experience" as defendants urge.
19          Similarly, the Court cannot conclude at this stage
20  that Henig did or was expected to draw on his legal knowledge,
21  judgment or training to perform his responsibilities.  Indeed,
22  the amended complaint alleges just the opposite.  Paragraph 34
23  of the amended complaint states that "plaintiff was not
24  required to, in fact, could not utilize any legal knowledge
25  and/or judgment in performing his job duties for defendants."

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcbghenc
```
 1    Such disputed matters cannot be definitively determined as a
 2    matter of law on this motion to dismiss.
 3              Accordingly, the Court denies defendants' motion to
 4    dismiss the FLSA claim but intends to revisit this issue after
 5    limited discovery on this issue.
 6              Henig also files a complaint for overtime under New
 7    York Labor Law.  Although New York law does not contain an
 8    explicit exemption for lawyers engaged in the practice of law,
 9    state law does expressly incorporate FLSA's exemptions.  See
10    New York Compilation of Codes, Rules, and Regulations, sections
11    142-2.2.
12              Defendants argue that state and federal law should be
13    interpreted interchangeably with respect to the exemption
14    categories, whereas plaintiff asserts that defendants must show
15    that he satisfied the general "professional exemption" criteria
16    under New York law.
17              Even assuming a defendants' interpretation of state
18    law is correct - and that New York law incorporates the
19    exemption for lawyers practicing law - plaintiff prevails in
20    this motion.  For the reasons I have just explained, it's not
21    implausible that Henig was engaged in something other than the
22    practice of law.
23              I'll also acknowledge the passing reference in Quinn
24    Emanuel's brief to the issue of whether it was Henig's
25    employer.  The firm's brief, however, devotes only two
```

11

Dcbghenc

1  sentences to this issue, cites no law or other authority, and
2  makes no other attempt to develop the argument.  I'm going to
3  decline to consider the argument at this stage of the case.
4  See, e.g., Bektic-Marrero v. Goldberg, 850 F.Supp.2d 418, 429
5  (S.D.N.Y. 2012), which declined to consider, on the motion to
6  dismiss, an argument raised in a single sentence in the
7  defendant's brief.
8          Finally, although I'm denying defendants' motion to
9  dismiss as I noted previously, I think it's best for the
10 parties to hold off on full discovery and motions for
11 collective and class certification.  Discovery at this stage
12 shall be limited to the issue of whether Henig was practicing
13 law.  This is a practice courts follow when a potentially
14 dispositive issue might be resolved through limited factual
15 development.  See, for instance, Kautz v. Sugarman
16 2011 WL 1330676, at *7, among other cases.
17         I appreciate that Quinn Emanuel has expressed concern
18 that discovery on this issue might raise issues of
19 attorney-client privilege.  Accordingly, by separate order that
20 will be filed later today, I will refer the case to Magistrate
21 Judge Fox to supervise discovery on this limited issue, then
22 we'll set a schedule for summary judgment briefing.
23         Why don't we talk now about scheduling?  How long do
24 you think it will take you to engage in the limited discovery
25 on issue of whether Henig was practicing law?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcbghenc
1           MR. KIRSCHENBAUM:  How does four months sound?
2           THE COURT:  Do you really need four months for this
3   very limited issue?  That's a normal amount of fact discovery
4   required and here, it's just on this very limited issue and not
5   on other issues.
6           MR. KIRSCHENBAUM:  Respectfully, the limited issue is
7   pretty much the entire case.  Once the exemption issue is
8   reached, the only remaining issue is damages.  Oh, I guess the
9   employer issue, too.
10          Three months; what does your Honor think?
11          THE COURT:  Why don't I ask the defendants, as well?
12          MR. GREENWALD:  I just want to go back.  The question
13  of timing goes back to the question of the attorney-client
14  privilege, which is not Quinn Emanuel's but belongs to our
15  client.
16          THE COURT:  I was noting you had raised the issue.
17          MR. GREENWALD:  I don't even understand how
18  Mr. Kirschenbaum gets to learn about the attorney-client
19  privilege information that belongs to Quinn Emanuel's clients.
20  We haven't put it at issue.
21          Mr. Henig is a licensed lawyer who cannot, under the
22  ethical rules, reveal attorney-client privilege information to
23  anyone without permission of the client.
24          I believe it's a threshold issue that makes it
25  difficult, if not impossible, to conduct discovery, except
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

13

Dcbghenc
```
 1   perhaps ex parte, providing it to the Court like we might do
 2   with a privilege log.
 3             THE COURT:  That may be or there may be documents that
 4   can be redacted that show the nature of the work without
 5   disclosure.  But in any event, the reason I'm not deciding that
 6   issue today and referring it to a magistrate is to assist you
 7   in that process.
 8             Back to timing, if your point is that this may take a
 9   little bit longer because you'll need to resolve these issues,
10   I'll give you the time that you need to do so.
11             MR. GREENWALD:  We only contracted for his work for
12   six weeks.  It shouldn't take very long.  There should be a
13   very small universe of documents.  We don't think it will take
14   very long, other than to deal with the thorny legal issues.
15             THE COURT:  There may be depositions that are taken or
16   interrogatories or some way that you'll want to get into the
17   record why he was hired, whether clients knew that an attorney
18   was hired as opposed to someone else, if he was held out as a
19   lawyer.  There are other things that aren't particularly
20   complicated, frankly, that I assume you would want in the
21   record.
22             MR. GREENWALD:  Absolutely.  We will produce them if
23   we can do so consistent without violating our client's
24   attorney-client privilege and work product rights that we have
25   to respect as a matter of our ethical duties.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

14

Dcbghenc

```
 1              THE COURT:  Right.
 2              Back to timing, tell me.  If you need more time
 3  because these issues are complicated, I will give you more
 4  time.  As I said, I'm referring it to a magistrate.  I can also
 5  leave it to the magistrate to figure out how much time is
 6  required.
 7              We don't have to set the briefing on summary judgment.
 8  We don't have to set the briefing schedule now.  I can make the
 9  reference to Magistrate Judge Fox.  When it's completed, he'll
10  let me know and we'll set up a prompt schedule to brief this.
11              MR. HUMMEL:  I would echo the comments from Quinn
12  Emanuel.  I think that's a fundamental issue and that's
13  something that I think in order to do the schedule, we really
14  need to understand and in what manner it will be produced and
15  how.  Then we can set the schedule.
16              I will be in favor of your most recent suggestion
17  which is, perhaps, refer it to the magistrate and then we can
18  decide the threshold issue, how that will be approached, and
19  then set the schedule.
20              THE COURT:  That's fine with me.  I won't set a
21  schedule today either for the timing to complete discovery on
22  this issue or the summary judgment briefing.  I'll refer it to
23  Magistrate Judge Fox.  You'll meet with him and sort out how
24  you're going to go about this process in light of the privilege
25  issues.
```

Dcbghenc

1    MR. KIRSCHENBAUM:  I was thinking we would serve
2  discovery requests, the defendants would object on the account
3  of attorney-client and/or work product, and then we would tee
4  up whatever the dispute is before Judge Fox.
5    I'm not sure how to tee up this issue before we even
6  have a pendent request that defendants have refused to answer.
7  My client, from our perspective, is prepared to be deposed and
8  testify and give testimony without violating attorney-client
9  privilege that I think could establish that he is nonexempt
10  under the FLSA.
11    To the extent the defendants think there is more
12  information or they don't want to respond to certain requests
13  and they want to bring up the attorney-client issue, they
14  should bring it up when there's a dispute.  Sitting here today,
15  there is no dispute at all.
16    THE COURT:  As I said, I'm going to refer this issue
17  to Magistrate Judge Fox.  If defendants want to have a
18  conference or telephone conference or something with Magistrate
19  Fox to talk about the issue before they respond, they'll make
20  that request.
21    If, instead, you serve your requests and their
22  response is based on their privilege concerns, it will be teed
23  up at that point, but I think you all can work this out.
24    MR. KIRSCHENBAUM:  Just to be clear, are we free to
25  serve discovery requests at this point?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcbghenc

1           THE COURT:  Do defendants have any objection to that?
2           MR. GREENWALD:  As long as it's limited to the issue
3   the Court limited it to, we have no objection.
4           MR. KIRSCHENBAUM:  Okay.
5           MR. HUMMEL:  Same here.
6           THE COURT:  I share that view.  You can share whatever
7   discovery requests and the like.  I think we should do this as
8   quickly as we can, again, leaving whatever time you need to
9   resolve the legal issues that are attendant to the discovery.
10  You should go ahead, and I'll issue a referral today and we'll
11  move from there.
12          MR. KIRSCHENBAUM:  Thank you.
13          MR. GREENWALD:  One final issue.
14          I do need to talk to my client and confer with
15  cocounsel, but we may seek permission to move for certification
16  on this issue because of the issues raised with discovery.
17          If there's a way we could get the circuit to rule on
18  the dispositive question of whether hiring a licensed lawyer
19  for a litigation project as alleged in the complaint is
20  dispositive as a matter of law, we may ask the Court to allow
21  us to do so.
22          THE COURT:  As a matter of law, without any record
23  whatsoever indicating that, in fact, he was held out as a
24  lawyer and making it all clear what he was actually doing,
25  other than what the amended complaint alleges, that's what you

17

Dcbghenc
```
 1   want to go to circuit?
 2             MR. GREENWALD:  I want to talk to my client.  We
 3   understand the Court's ruling.
 4             THE COURT:  All I have is the amended complaint.  All
 5   I have is that one document and the attendant documents that
 6   you have asked me to take judicial notice of.  I don't think
 7   discovery in this case needs to be all that extensive.
 8             I think I indicated here today a lot of the things
 9   that would be very helpful to possible disposition of this
10   case, but in any event, you're permitted to make whatever
11   motion you'd like to make.
12             MR. GREENWALD:  Thank you.
13             THE COURT:  I'm not going to hold off discovery.  I
14   want to proceed with discovery.  I'm going to make the
15   reference today.  You'll start to get that process going and
16   then I will entertain the motion and then get the summary
17   judgment briefs, hopefully sometime in the near future.
18             MR. GREENWALD:  Thank you.  It's not burden of costs;
19   it's the issue surrounding attorney-client privilege.
20             THE COURT:  I understand your position.  I understand
21   from your position why it's complicated.
22             I'm confident you'll be able to work some system out
23   where you can engage in this process in exchanging discovery
24   while preserving privilege, whether it's in redacted form or
25   otherwise.
```

18

Dcbghenc

1    Frankly, I would encourage you, as you are required to
2    do under the rules, to try and work it out yourself and think,
3    is there a way that we can respond to the discovery issues, tee
4    this up for the Court so the Court has the information it needs
5    in the record without infringing on privilege.
6        I think you should all start to talk about that.
7        MR. GREENWALD:  Yes.
8        MR. KIRSCHENBAUM:  One thing to note for the record.
9    I think it's important to point out the difference between
10   attorney-client privilege and work product privilege.
11       I don't see us looking for any attorney-client
12   communications at all.  In fact, I don't think my client ever
13   met with a client of Quinn Emanuel's.
14       THE COURT:  It may, in fact, just be work product.
15   I'm just basing it on what defense counsel noted, but it may
16   really be an issue of work product.
17       MR. GREENWALD:  If the question is how and why our
18   client wanted to hire lawyers for this task, that would be
19   attorney-client privilege information, communications between
20   us and our client about how to defend their case.
21       I anticipate that much of what we need to put into the
22   record to demonstrate that he was held out as a lawyer, he was
23   hired as a lawyer, as the Court pointed out, is attorney-client
24   privilege information, and that privilege belongs to the client
25   and not Quinn Emanuel.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                                    19
     Dcbghenc
1              THE COURT:  We'll deal with these issues as they come.
2    We are adjourned.
3              Thank you all.
4              (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25